## DUPASSEUR *v.* ROCHEREAU.

1. When, in a case in a State court, a right or immunity is set up under and by virtue of a judgment of a court of the United States, and the decision is against such right or immunity, a case is presented for removal and review by writ of error to the Supreme Court of the United States under the act of February 5th, 1867.

2. In such a case, the Supreme Court will examine and inquire whether or not due validity and effect have been accorded to the judgment of the Federal court, and if they have not, and the right or immunity claimed has been thereby lost, it will reverse the judgment of the State court.

3. Whether due validity and effect have or have not been accorded to the judgment of the Federal court will depend on the circumstances of the case. If jurisdiction of the case was acquired only by reason of the citizenship of the parties, and the State law alone was administered, then only such validity and effect can be claimed for the judgment as would be due to a judgment of the State courts under like circumstances.

4. Judgment was rendered by the Circuit Court of the United States for Louisiana on a vendor's privilege and mortgage, declaring it to be the first lien and privilege on the land; and the marshal sold the property clear of all prior liens; and the mortgagee purchased, and paid into court for the benefit of subsequent liens, the surplus of his bid beyond the amount of his own debt. This judgment and sale were set up by way of defence to a suit brought in the State court by another mortgagee, who claimed priority to the first mortgage, and who had not been made a party to the suit in the Circuit Court. The State court held that the plaintiff was not bound by the former judgment on the question of priority, not being a party to the suit. The case was brought to the Supreme Court of the United States by writ of error, and this court *held,* that the State court did not refuse to accord due force and effect to the judgment; that such a judgment in the State courts would not be conclusive on the point in question, and the judgment of the Circuit Court could not have any greater force or effect than judgments in the State courts.

ERROR to the Supreme Court of the State of Louisiana; the case being thus:

Pierre Sauvé, of the city of New Orleans, being indebted to one Rochereau, of the same place, in the sum of $35,000, executed on the 26th of February, 1858, an authentic act of mortgage to him before a notary public, for the security of the debt, upon a sugar plantation in Louisiana, above New Orleans, with all the farming utensils, machinery, cattle, and slaves belonging thereto. The mortgage, shortly after its execution, was duly recorded in the proper office of the parish.

On the 15th of March, 1866, Rochereau obtained judgment against Sauvé in the Sixth District Court of New Orleans for the debt with interest and costs, with a recognition of the special mortgage.

On the 7th of June, 1866, Rochereau commenced an action in the same court against Edward Dupasseur, by a petition setting forth the said judgment and the act of mortgage, and the failure of Sauvé to pay the same, and alleging that Dupasseur had taken possession of the plantation as owner thereof, and charging that the same was bound for the debt, and that Dupasseur was bound either to pay the debt or to give up the plantation, and praying process and decree accordingly.

Dupasseur, in his answer, set up the following defence:

"That he purchased the property described in the plaintiff's petition at a sale made by the marshal of the United States, in virtue of an execution issued on a judgment rendered by the Circuit Court of the United States for the Eastern District of Louisiana, in the case of *Edward Dupasseur* v. *Pierre Sauvé, free of all mortgages and incumbrances, and especially from the alleged mortgage of the plaintiff;* that the marshal's sale was made in virtue of a judgment based on and recognizing the existence of a superior privilege and special mortgage to that claimed by the said plaintiff; and that the whole of the proceeds of said sale was absorbed to satisfy the judgment in favor of this respondent, except $15,046, which are in the said marshal's hands, subject to the payment, *pro tanto*, of the plaintiff's mortgage."

The record of the judgment and proceedings in the United States Circuit Court, together with the execution and sheriff's deed to Dupasseur, and also the original act of mortgage on which the proceedings were founded, were given in evidence. From these it appeared that Sauvé purchased the plantation in question from one Jacobs, in June, 1852; that he paid part cash, and secured the balance by five notes payable respectively in one, two, three, four, and five years, and that the payment of the notes was secured by a reservation of the vendor's lien in the act of sale by way of special mortgage, with a covenant not to alien, &c., which act was duly recorded as a special mortgage in the proper office in 1852, *but was not reinscribed within ten years, and not until* 1865; it being alleged, and proof being offered to show, that it was impossible, on account of the prevalence of the war, to have the reinscription made within the proper time. The last note of $29,000 was not paid, and suit was brought upon it against Sauvé by Jacobs, the then holder, in October, 1858, in the Third Judicial District Court of Louisiana for Jefferson Parish, and on the 21st of November, 1859, judgment was rendered for the amount, recognizing priority of the mortgage on the plantation, and an order made for paying the money into court. On the 5th of April, 1861, Sauvé borrowed $37,011 of Dupasseur, the defendant, to pay this judgment, and gave him a new note for that amount, and Dupasseur was, by a notarial act, subrogated to the rights of Jacobs in the judgment and mortgage.

On the 1st of December, 1863, Dupasseur & Co., citizens of France, in right of Dupasseur, filed a petition in the Circuit Court of the United States for a sequestration of the crops, that Sauvé might be cited to appear and answer, and for judgment for $37,011 (the amount of the previous judgment), with interest and costs, to be paid by right of special mortgage and with vendor's lien and privilege, before all other creditors, and for sale, &c. *No one was made a party to this suit except Pierre Sauvé.* On the 23d of February, 1865, judgment was rendered in this case, to the effect that Dupasseur recover from Sauvé the amount sued for, with ven-

dor's lien and privilege upon the plantation in question; and an execution was issued thereon, by virtue of which the marshal, on the 5th of May, 1866, sold the property to Dupasseur for $64,151, being $15,046 more than sufficient to satisfy his claim. The balance was paid to the marshal, and by him paid into the Circuit Court of the United States, to be disposed of according to law.

In the suit first abovementioned—the one brought in the Sixth District Court of New Orleans by Rochereau against Dupasseur, and to which Dupasseur set up the defence just abovementioned—judgment was finally given for Rochereau on the 28th of January, 1868, and was affirmed by the Supreme Court of Louisiana on the 28th of April, 1868. The judgment of the Supreme Court was now brought here by the present writ of error. Dupasseur, the now plaintiff in error, alleging as a ground of bringing the case here, that the State court decided against the validity of a judicial decision in his favor made by the Circuit Court of the United States on the very question at issue in this action, which decision was set up and relied on by him in his defence; and, therefore, that the case came within the terms of the second section of the act of February 5th, 1867* (section 709, Revised Statutes of the United States), replacing the twenty-fifth section of the Judiciary Act,† which enacts among other things that a writ of error from this court will lie to the highest court of the State in which a decision in the suit could be had—

"Where any title, right, privilege, or immunity is claimed under the Constitution, or any treaty or statute of or commission held, or *authority exercised* under the United States, and the decision is against the title, right, privilege, or immunity specially set up or claimed under such Constitution, treaty, statute, commission or authority."

Two questions were thus raised by Dupasseur in this court:

---

* 14 Stat. at Large, 385.

† See the section, 20 Wallace, 592, 593, right-hand column.

1st. Whether this court had jurisdiction under the act of 1867, already mentioned, to hear the case?

2d. Did the State court refuse to give validity and effect to the judgment of the Circuit Court of the United States in favor of Dupasseur?

*Mr. A. C. Story, for the plaintiff in error; Messrs. E. and A. C. Janin (with whom was Mr. Charles Andrew Johnson), contra.*

Mr. Justice BRADLEY delivered the opinion of the court.

Where a State court refuses to give effect to the judgment of a court of the United States rendered upon the point in dispute, and with jurisdiction of the case and the parties, a question is undoubtedly raised which, under the act of 1867, may be brought to this court for revision. The case would be one in which a title or right is claimed under an authority exercised under the United States, and the decision is against the title or right so set up. It would thus be a case arising under the laws of the United States, establishing the Circuit Court and vesting it with jurisdiction; and hence it would be within the judicial power of the United States, as defined by the Constitution; and it is clearly within the chart of appellate power given to this court, over cases arising in and decided by the State courts.

The refusal by the courts of one State to give effect to the decisions of the courts of another State is an infringement of a different article of the Constitution, to wit, the first section of article four; and the right to bring such a case before us by writ of error under the twenty-fifth section of the Judiciary Act, or the act of 1867, is based on the refusal of the State court to give validity and effect to the right claimed under that article and section.

In either case, therefore, whether the validity or due effect of a judgment of the State court, or that of a judgment of a United States court, is disallowed by a State court, the Constitution and laws furnish redress by a final appeal to this court.

We cannot hesitate, therefore, as to our jurisdiction to hear the case.

The question then arises, did the Supreme Court of Louisiana in deciding against the claim of Dupasseur refuse, as the defendant charged, to give proper validity and effect to the judgment of the Circuit Court of the United States, and decide against such validity and effect?

The only effect that can be justly claimed for the judgment in the Circuit Court of the United States, is such as would belong to judgments of the State courts rendered under similar circumstances. Dupasseur & Co. were citizens of France, and brought the suit in the Circuit Court of the United States as such citizens; and, consequently, that court, deriving its jurisdiction solely from the citizenship of the parties, was in the exercise of jurisdiction to administer the laws of the State, and its proceedings were had in accordance with the forms and course of proceeding in the State courts. It is apparent, therefore, that no higher sanctity or effect can be claimed for the judgment of the Circuit Court of the United States rendered in such a case under such circumstances than is due to the judgments of the State courts in a like case and under similar circumstances. If by the laws of the State a judgment like that rendered by the Circuit Court would have had a binding effect as against Rochereau, if it had been rendered in a State-court, then it should have the same effect, being rendered by the Circuit Court. If such effect is not conceded to it, but is refused, then due validity and effect are not given to it, and a case is made for the interposition of the power of reversal conferred upon this court.

We are bound to inquire, therefore, whether the judgment of the Circuit Court thus brought in question would have had the effect of binding and concluding Rochereau if it had been rendered in a State court. We have examined this question with some care, and have come to the conclusion that it would not.

The same general rule of law and justice prevails in Louisiana as elsewhere, to the effect that no persons are bound

by a judgment or decree except those who are parties to it, and have had an opportunity of presenting their rights. The only apparent exception to this rule in general, is the effect of a proceeding *in rem*, which from the necessity of the case is binding on all persons. This exception is only apparent, for indeed in that case all persons having any interest in the thing are deemed parties, and have the right to intervene *pro interesse suo;* and if after the lawful publications of notice have been made they fail to do so, they are considered as having acquiesced in the exercise of the jurisdiction. A further exception, in Louisiana, arises from the pact *de non alienando* in mortgages, which dispenses with the necessity of making subsequent grantees or mortgagees parties in a proceeding to enforce payment of the mortgage. They are to take notice at their peril.

In this case, Rochereau was not made a party to the suit of Dupasseur in the Circuit Court of the United States; and the only questions remaining, therefore, are whether that was a proceeding *in rem*, or whether Rochereau was a subsequent mortgagee to Dupasseur?

The fact that a sequestration was issued does not make the proceeding one *in rem*, as that was a mere ancillary process for preserving the movables and crops on the mortgaged property from waste and spoliation. It did not, in the slightest degree, change the character of the suit. And, in truth, it was never executed, as the return of the marshal shows. The question then recurs as to the character of the suit itself. It was an action brought against Sauvé on the judgment obtained against him by Jacobs in the District Court for Jefferson Parish, which judgment had been, in effect, assigned to Dupasseur. The petition prayed, besides a sequestration of the crops, &c., that Sauvé might be cited to appear and answer; that judgment might be rendered in favor of the petitioner for the sum of $37,011.99,* and interest and costs to be paid by right of special mortgage and with vendor's lien and privilege upon the plantation, slaves,

---

* The amount of the previous judgment.

stock, &c., and that the same might be sold for cash for an amount sufficient to pay said judgment by preference, right of special mortgage and vendor's lien and privilege, and before all other creditors. This was, therefore, nothing but the ordinary hypothecary action brought to enforce payment of a special mortgage. It is called a real action in the Code of Practice, because it seeks the sale of particular property liable to the plaintiff's mortgage. But this does not necessarily make it a proceeding *in rem* in the sense of which we have spoken. It is brought against the person in possession, as well as the property, and the creditor can only seize and sell such property, after having obtained judgment against the debtor in the usual form.*

The case is, therefore, clearly not a proceeding *in rem* properly so called.

Then was Rochereau a subsequent mortgagee to Dupasseur? Was the latter entitled to priority? If so, Rochereau would be bound by the judgment though not made a party. But he contends that his is the prior lien and not the subsequent one.

Now we can find nothing in the Code of Practice or in the judicial decisions of the State of Louisiana, which goes to show that Rochereau or any other person claiming a prior lien to that of Dupasseur on the property in question would be concluded by this judgment and forever estopped from showing that truth. Unless there is something peculiar in the Louisiana laws which makes the effect of the judgment different from what it would be under other systems of jurisprudence, prior mortgagees, and those having elder titles not made parties to the suit, cannot be affected by the judgment.

Indeed the appellant's counsel does not contend that prior mortgagees, or those having prior liens or privileges, were affected, but he insists that subsequent mortgagees are affected, and are entitled only to the surplus proceeds which have been paid into court, and that it was not necessary to

---

* Code of Practice, article 64.

make them parties because of the pact *de non alienando;* and he insists that Rochereau was a subsequent mortgagee.

Now that is the very point in dispute. Rochereau insists that by the non-inscription of the Jacobs mortgage within ten years, it lost its rank, and became the subsequent and not the prior mortgage. Grant that Rochereau was the subsequent mortgagee, and all that the appellant claims would necessarily follow. But that point is not granted; on the contrary it is the very matter in dispute, and on this vital point we think that Rochereau was not concluded by the judgment of the Circuit Court, because he was not a party to it. Therefore, the State court, in not regarding the decision of the Circuit Court as decisive of that question, did not refuse to that decision its due and legal effect.

The sections of the Code of Practice which direct the mode of proceeding at sheriff's sales under mortgage or other liens do not affect the question. They simply require, in substance, that the sheriff shall possess himself of the recorder's certificate of the various incumbrances on the property, and shall sell subject to all liens and privileges prior to that under which the sale is made; and if the property is bid off for more than those prior liens and privileges, the purchaser only pays the balance and takes the property subject to them. This shows that prior liens are not to be affected or disturbed. If the sheriff by a mistake of law or fact regards a prior lien as a subsequent one, surely his mistake cannot destroy or postpone the lien which he thus fails to assign to its proper place.

JUDGMENT AFFIRMED.