927 F.2d 1014
 56 Empl. Prac. Dec. P 40,652, 19 Fed.R.Serv.3d 332
 Silas J. ALEXANDER, Mary Allion and Karen Turner, et al.,
and
Earl Alexander, Herman Barnett and Kyle Booker, et al.,
Plaintiffs-Appellees,
v.
CHICAGO PARK DISTRICT, Leslie P. Liss, as attorney and agent
for the Chicago Park District, and in his
individual capacity and Patrick
O'Malley, et al., Defendants.
Appeal of Rufus COOK and Cook Partners Law Offices, Limited.
 Nos. 89-3440, 90-1807.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 18, 1990.
Decided March 21, 1991.
Rehearing and Rehearing En Banc Denied
May 10, 1991.
 
 James S. Whitehead, Scott E. Gross, Sidley & Austin, Barbara Revak, Chicago, Ill., for plaintiffs-appellees.
 Jack J. Carriglio, Foran, Wiss & Schultz, George F. Galland, Jr., Davis, Miner, Barnhill & Galland, James D. Wascher, Chicago, Ill., for defendants.
 Barbara Revak and Rufus Cook, Chicago, Ill., for appellants.
 Before POSNER, RIPPLE, and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Attorney Rufus Cook appeals two district court decisions regarding his expenses following settlement of a civil rights action against the Chicago Park District ("Park District"). This dispute between Cook and his former clients relates to the appropriate disbursement of funds obtained by the settlement agreement. Cook sought enforcement of contingent fee agreements contrary to the disbursement ordered by the district court. The district court ordered the settlement money distributed according to the settlement agreement. When Cook failed to properly disburse the award, the district court held him in contempt and imposed a daily fine. Cook appeals the district court's ruling on expenses and its decision to place him in contempt. We affirm both district court orders.
 
 I.
 
 2
 We must recount the lengthy history of this litigation to explain the present legal entanglement which pits a civil rights attorney against the class action members he formerly represented.
 
 
 3
 In 1979 plaintiffs Silas J. Alexander, et al., represented by Rufus Cook of Cook Partners Law Offices, Ltd., filed a seven-count amended complaint charging the Chicago Park District and Park District officials with racial discrimination in the allocation of recreational resources and in various employment practices. Count II of the complaint alleged that the Park District administered a racially and culturally biased examination for the position of "physical instructor" that resulted in lost wages, benefits, job security and employment opportunities.
 
 
 4
 In 1980 Judge George N. Leighton certified several classes, including a "Count II subclass" that included black and Hispanic "physical instructors" who took the allegedly discriminatory test in 1977 and 1978 and whose employment status was thereafter adversely affected. Over the next eight years most of the plaintiffs' claims were resolved in favor of the Park District,[1] but Count II and one other count remained unresolved. In 1987 Judge Leighton retired, and Judge Ilana D. Rovner was assigned to the case. In April of 1988 the parties entered into a proposed settlement agreement on the remaining counts, which provided injunctive relief to each subclass and an award of $500,000 to the Count II subclass. In May of 1988 the parties jointly moved the district court for approval of the proposed agreement.
 
 
 5
 Paragraphs 1, 2(a) and (5) of the agreement described the settlement's key terms, leaving final decisions on fee disbursement squarely in the hands of the district court:
 
 
 6
 1. Settlement Fund. Within five days after final judicial approval (as hereinafter defined) of this Settlement Agreement, the Park District shall pay into a settlement fund to be controlled and administered by counsel for the plaintiffs, as trustees for the class, the sum of five hundred thousand dollars ($500,000.00). This settlement fund, plus any interest that accrues on it after its creation, shall be used as hereinafter described for the payment of settlement claims by members of the Count II class and for the payment of attorney's fees and costs to counsel for plaintiffs. The transfer of this sum by the Park District into such fund shall fully and forever discharge it and all other defendants from all monetary obligations they have under this Settlement Agreement or under this lawsuit.
 
 
 7
 2. Claims against the Settlement Fund.
 
 
 8
 (a) There shall be initially paid from the Settlement Fund to plaintiffs' counsel such amounts as the Court shall hereinafter award, pursuant to paragraph 5 below, in attorney's fees and costs.
 
 
 9
 * * * * * *
 
 
 10
 5. Fees and Costs. Upon execution of this Settlement Agreement, counsel for plaintiffs shall file a petition to be paid reasonable fees and costs out of the Settlement Fund. The Court shall dispose of this petition as it deems proper. The defendants shall not participate in that disposition. The defendants shall have no liability whatsoever for any fees and costs incurred, in the past or hereinafter, by plaintiffs' counsel in the prosecution of any part of this lawsuit or in the administration of the Settlement Agreement.
 
 
 11
 (Emphasis added).
 
 
 12
 A proposed notice to class members was also presented for approval to the district court. Under a section titled "Cash Payments," the proposed notice stated that from the fund amount of $500,000, "plaintiffs' counsel will be paid such attorney's fees and costs as the Court directs. (See paragraph 7 below.) After payment of those fees and costs, the amount remaining in the Fund will be paid to eligible persons...." Paragraph 7, entitled "Attorneys' Fees and Costs," stated that "[c]ounsel for plaintiffs has filed a petition to be paid reasonable fees and costs out of the Settlement Fund. Counsel for plaintiffs have petitioned the Court for fees and costs totalling $350,000. The Court will determine what amount it will award to counsel."
 
 
 13
 Cook also sent a personal letter to class members urging them to accept the settlement agreement. The eight-page letter recounted the history of the litigation, and under a section entitled "Partial Reimbursement of Costs and Expenses Advanced by Our Firm," described Cook Partners' monetary request:
 
 
 14
 [U]nder the terms of the proposed settlement agreement, our law firm is to petition the court in order to be reimbursed a portion of costs and expenses our firm has advanced in pursuing this case, and for attorneys' fees. Unfortunately, notwithstanding the fact that our firm has pursued the litigation on behalf of each of you and the class as a whole for nine years now without any class member paying our firm one cent, we are not seeking so much as a dollar in attorneys' fees. We will seek only to be reimbursed approximately $350,000, representing a small portion of the expenses and costs we have incurred.
 
 
 15
 Consistent with the proposed agreement, Cook filed a petition for partial reimbursement of expenses. The petition listed total expenses of $776,773.01 incurred in prosecuting the Count II and Count IV claims, including: about $413,000 for "project management, computer operations and computer printing costs by the Law Data Centre"; approximately $111,000 for "personnel costs advanced to programmers at the ... Law Data Centre"; and approximately $100,000 for "personnel costs advanced to the Chicago Project Administrator and support personnel of Policy Research Consultants". On June 10, 1988, the district court conducted a hearing on Cook Partners' expense petition. The court was concerned that several items in the petition lacked sufficient "descriptive and explanatory detail" to support an award. In particular, Judge Rovner was curious about the huge payments to Policy Research Consultants and the Law Data Centre. After Cook explained that Policy Research Consultants was a Washington, D.C. consulting organization hired to do statistical research that assisted in devising the case's statistical framework, the following colloquy occurred:
 
 
 16
 THE COURT: Now, who is Junerous Cook?
 
 
 17
 MR. COOK: Junerous Cook is my former wife from whom I have been divorced for some 20 years now. She is also a statistician and a research specialist. And she was with Policy Research Consultants. She had had a relationship of more than 25 years duration with the principles of that company, and they hired her to be the Chicago representative for them.
 
 
 18
 THE COURT: And is Cook Development then her company?
 
 
 19
 MR. COOK: No, Cook Development is a company in which I have an interest. I don't know how Cook Development enters into it though.
 
 
 20
 THE COURT: There are some checks, as I recall, made out to Cook Development, but let me take a look.... Law Data Centre, Inc. That has the same address as Cook Partners. What is Law Data Centre?
 
 
 21
 MR. COOK: Law Data Centre is a computer service firm that sells company services and rents time on a mini computer that is located at that address, 1331 South Michigan.
 
 
 22
 THE COURT: And tell me what exactly they did.
 
 
 23
 MR. COOK: Well, all of this material that we obtained by discovery and otherwise from the Park District had to be processed, organized, and then computerized so we could make some sense of it.... So we had to take all of the raw data, have it entered into that computer, and then have it processed, analyzed and so forth. And Law Data Centre was the company that owned the computer and whose computer technicians were responsible for doing the programming and so forth that resulted in our ability to put the data in and to process it.
 
 
 24
 THE COURT: Who owns Law Data Centre?
 
 
 25
 MR. COOK: At that time I owned an interest in it. There was another fellow in Washington D.C. who was an owner in it.
 
 
 26
 After further discussion of the work performed by Policy Research Consultants and the Law Data Centre, the court returned to the $413,000 Cook claimed was still owed to Law Data Centre:
 
 
 27
 THE COURT: Who is the president of Law Data Centre?
 
 
 28
 MR. COOK: I believe the current president of Law Data Centre is Harold Algar.
 
 
 29
 THE COURT: Is that a company you have a part interest in?
 
 
 30
 MR. COOK: Yes. Yes.
 
 
 31
 THE COURT: How much of an interest do you have?
 
 
 32
 MR. COOK: At the time this work was done, I believe, I had a 60 percent interest in it. In 1985 I have bought out Mr. McWilliams, the lawyer in Washington, who owned 40 percent of the firm. I now own 100 percent of it. Clearly the firm has been unable to collect for the work it has done so it is not a very active firm at this point.
 
 
 33
 Judge Rovner requested further documentation from Cook on the specific tasks performed by individuals at Policy Research and the Law Data Centre who billed time, and whether that time was related solely to Counts II and IV. On June 16, 1988 Cook filed affidavits from himself, Lillian Schrean, office manager for Cook Partners, and Stanley Williams, chief programmer for the Law Data Centre.
 
 
 34
 On June 17, 1988, the court held a fairness hearing on the settlement agreement. One written objection was filed by the spouse of a deceased class member, who did not oppose the settlement but was critical of Cook Partners' request for more than half of the settlement proceeds. Cook Partners filed a memorandum relating to computer expenses on June 29, 1988, and a second affidavit from Schrean on July 7, 1988.
 
 
 35
 The district court approved the settlement on September 26, 1988, and in a lengthy opinion explained its decision to award Cook Partners only $108,906.01 instead of the $350,000 requested. Judge Rovner concluded that Cook
 
 
 36
 has not met his burden of proving that the expenditures, assuming they were all made, were reasonable expenditures for this case. The Court finds plaintiffs' counsel's petition for costs and expenses to be excessive for a variety of reasons. To begin with, the sheer magnitude of the $350,000 which is requested for costs and expenses alone is unprecedented and somewhat mind-boggling.... The costs requested in this case are ... approximately fifteen times as great as awards of costs in cases of similar magnitude.
 
 
 37
 The district court noted that the proposed award constituted 70 percent of the settlement funds, thus directly cutting into the amount available to class members. The court pointed out that it could not be sure from the materials submitted whether the claimed expenses related only to the two counts on which the settlement agreement was reached. Judge Rovner expressed further "concerns over the types and amounts of expenses" incurred:
 
 
 38
 [D]espite two attempts by plaintiff's [sic] counsel to explain the claimed expenses, the Court has been unable to determine exactly what was spent on the case even after many hours of review of the records. Similarly, the Court has been unable to determine that any of the expenses were incurred only with respect to those of the plaintiffs' claims which were successful. Counsel has essentially thrown a myriad of miscellaneous records onto the Court's lap and left it to the Court to determine what was actually and reasonably spent.
 
 
 39
 Judge Rovner's final criticism of the expense request was perhaps the most serious--a challenge to the "staggering" fees run up by the Law Data Centre and Policy Research Consultants:
 
 
 40
 [T]he necessity of these services and the reasonableness of the costs which were expended on these services are called into some doubt by the particular circumstances involved. During oral proceedings in which plaintiffs' counsel attempted to explain his Petition, Mr. Cook admitted, somewhat hesitantly, that he owned Law Data Centre. Similarly, it was revealed that Mr. Cook's ex-wife is the Chicago representative for Policy Research Consultants.... These relationships raise questions concerning counsel's incentive to hold costs down, to "shop" for the most cost-efficient services, and to scrutinize the level of services which were required to pursue his case. They also raise questions concerning Mr. Cook's fulfilment of his fiduciary obligations to the class members, and it is questionable whether any compensation at all should inure to one who has acted other than in the most scrupulous fashion regarding the financial interests of the class.
 
 
 41
 Judge Rovner decided not to be so "punitive" as to completely deny Cook's expense request, and instead awarded 10 percent of the costs associated with the Law Data Centre and Policy Research. She also reduced the photocopying request by 50 percent because the amount sought per photocopy far exceeded the market rate, and reduced the award for witness fees to the amount of fees actually paid out. Thus the court reached the figure of $108,906.01, concluding that the reduced total "still represents a very generous award of costs and expenses in comparison with other cases." The court stated that it took into consideration Cook's decision to not seek attorney's fees, a decision the district court thought was prompted by Cook's recognition that his performance as plaintiffs' counsel had not "been of the standard expected by this Court." In a final footnote, Judge Rovner pointed out that the Seventh Circuit referred to Cook Partners' statistical analyses of park conditions as "shoddy" and "unprofessional," and that another district court judge had "found that plaintiff's counsel does not provide adequate representation to prosecute a class action."
 
 
 42
 Cook Partners immediately appealed Judge Rovner's fee decision to this court, and at the same time filed a Rule 60 motion for relief in the district court. The Rule 60(b) motion, according to Cook Partners, "responds to each and every misstatement, falsehood, libel and character assassination contained in the Court's September 26, 1988 opinion." In response to the Rule 60 motion, the district court increased the award to $128,705.68 because it concluded Cook Partners was actually entitled to the full photocopying expenses (Park District photocopying requirements made the extra expense necessary). However, the district court reaffirmed its other initial rulings and denied Cook Partners' other contentions, including the argument that an evidentiary hearing should have been conducted regarding the claimed costs:
 
 
 43
 The movants' primary complaint is that this Court did not afford them sufficient opportunities to present evidence concerning the accuracy and reasonableness of their request for costs. On the contrary, plaintiffs' counsel were given several opportunities to develop such evidence ... yet they now assert that the Court should have given them additional opportunities so long as the Court was not convinced of the reasonableness of their request for costs. Under this logic, no court would ever rule against a party, for the court would be required to continue returning to the movant and requesting additional information until the court was convinced that the movant's position was meritorious.
 
 
 44
 Cook Partners' appeal from the district court's Rule 60 ruling was consolidated with its earlier appeal. Meanwhile, the Park District appealed from a November 16, 1988 district court order denying its request to delay payment of the $500,000 to plaintiffs' counsel pending Cook Partners' appeal, and a December 16 order denying the Park District's motion to reconsider. The Park District had unsuccessfully argued that the settlement sum, payable upon "final judicial approval" of the settlement, was not payable until the Cook Partners appeal was resolved.
 
 
 45
 Beginning in January of 1989 Cook Partners and the Park District discussed a supplementary settlement agreement to resolve the remaining issues in dispute. If Cook Partners dropped its appeal from the district court's fee request orders, the Park District's appeal of the order denying delay of payment would be moot. Thus they agreed on a supplementary settlement that called for both parties to abandon their appeals, and for the district court's previous orders relating to Cook's expense requests and the district's delay requests to be withdrawn, and replaced by an order approving the supplementary settlement agreement. This agreement was approved by the district court in a March 20 order written by the parties.
 
 
 46
 The supplementary settlement agreement, which was drafted by Cook Partners, provided:
 
 
 47
 This Supplementary Settlement Agreement is made between Plaintiffs and Defendants by their respective counsel, for the purpose of mooting certain ancillary disputes that threaten to delay the implementation of the Settlement Agreement Subject to Court Approval (Settlement Agreement) previously approved by the district court.
 
 
 48
 WHEREAS, the district court has previously approved a Settlement Agreement that provides certain benefits, monetary and otherwise, to the class upon "final judicial approval" of the Settlement Agreement;
 
 
 49
 WHEREAS, in connection with the approval of that Settlement Agreement, the District Court reached certain conclusions regarding Plaintiffs' counsels' [sic] petition for award of statutory costs in accordance with 42 U.S.C. Section 1988, and entered orders and opinions dated September 26, 1988 and December 6, 1988, the effect of which was to award Plaintiffs' counsel statutory costs in the amount of $128,705.68;
 
 
 50
 WHEREAS, Defendants acknowledge that they have no interest in the amount of costs which Plaintiffs' counsel ultimately receive, whether statutory in nature or provided for in accordance with the terms of contingent fee agreements;
 
 
 51
 WHEREAS, Plaintiffs' counsel has appealed to the Court of Appeals for the Seventh Circuit from the District Court's September 26 and December 6, 1988 orders asserting that they were entitled to an evidentiary hearing on the conclusions reached by the court on their petition to be awarded statutory costs, and that the amount of costs awarded was inadequate;
 
 
 52
 WHEREAS, the District Court ordered Defendants to transfer the $500,000 fund immediately in orders dated November 16 and December 16, 1988, and then stayed these orders January 23, 1989;
 
 
 53
 WHEREAS, Defendant CHICAGO Park Dist RICT [sic] has appealed to the Court of Appeals for the Seventh Circuit from the District Court's November 16 and December 16, 1988 orders;
 
 
 54
 WHEREAS, the dismissal of Plaintiffs' counsels' [sic] appeals over costs would moot the Park Dist RICT'S [sic] appeal over the District Court's transfer orders, and counsel have advised the court that Plaintiffs' counsel, who have contingent fee agreements with certain of their clients through which part of their costs are recoverable, will in view of that fact accept the award of statutory costs heretofore made by the court, in the interest of avoiding further delay in delivering to the class the relief afforded by the Settlement Agreement;
 
 
 55
 WHEREAS, the parties mutually agree that it is in their best interests to avoid further delays in implementing the Settlement Agreement and the expenses attendant to prosecution of the various appeals;
 
 NOW THEREFORE, it is agreed as follows:
 
 56
 A. On the next business day following execution by the parties hereto of this Supplementary Settlement Agreement counsel for the parties shall file a joint motion in the Court of Appeals for the Seventh Circuit seeking a conditional dismissal of consolidated appeals nos. 88-3106, 89-1032 and 89-1102, and an immediate limited remandment of this cause to the District Court, in order to permit the parties jointly to move that court to vacate certain of its orders as described in paragraph B below;
 
 
 57
 B. On the next business day following entry by the Court of Appeals for the Seventh Circuit of an order conditionally dismissing said appeals and remanding the cause to the District Court, counsel for the parties shall file a joint motion with the District Court in which they provide the court with a copy of this Supplementary Settlement Agreement, and request the court to vacate its orders and opinions dated September 26, November 16, December 6 and December 16, 1988 and in lieu thereof enter the order set forth in Exhibit A hereto;
 
 
 58
 C. In the event the district court declines to vacate in their entirety the orders and opinions entered September 26, November 16, December 6, and December 16, 1988 and in their place enter the order set forth in Exhibit A hereto, the parties shall within three days thereafter file a joint motion in the Court of Appeals seeking leave to reinstate appeals nos. 88-3106, 89-1032 and 89-1102;
 
 
 59
 D. In the event the district court enters the order attached hereto as Exhibit A, the parties in consideration of the mutual promises each has made to the other agree to waive and do hereby waive their mutual rights to appeal from the entry of that order.
 
 
 60
 The March 20 district court order provided:
 
 
 61
 This matter coming on to be heard on the joint motion of Plaintiffs and Defendants, based on the Supplementary Settlement Agreement previously reviewed by the court, to vacate this court's orders and opinions dated September 26, November 16, December 6, and December 16, 1988, and the court being fully advised in the premises;
 
 IT IS HEREBY ORDERED THAT:
 
 62
 1. The court's September 26, November 16, December 6 and December 16, 1988 orders and opinions are vacated and held for naught and the appropriate steps will be taken by the court to effectuate the withdrawal of each of them from publication;
 
 
 63
 2. "Final judicial approval" of the Settlement Agreement Subject to Court Approval made between the parties the 25th day of April, 1988 (hereinafter Settlement Agreement) shall take place on the entry of this order.
 
 
 64
 3. Pursuant to paragraph 5 of the Settlement Agreement, Plaintiffs' counsel is hereby awarded statutory costs of $128,705.68.
 
 
 65
 4. The court retains jurisdiction of this matter to assure compliance by all parties with the obligations which accrue upon "final judicial approval" of the Settlement Agreement.
 
 
 66
 At last, Cook Partners began to distribute money to class members. But instead of withholding for expenses the $128,705.68 allowed by the district court, Cook Partners retained the $350,000 it sought in its initial petition. Judge Rovner was not informed of this development until August 31, 1989, when six of the 19 class members wrote a letter to the court asking why Cook was being allowed to keep two-thirds of the settlement, and inquiring whether they could challenge Cook's unilateral determination of their shares. They attached a copy of a letter to one of the class members informing her that "the contingent fee agreement you entered into with Cook Partners" was being enforced. Cook Partners argued that it was entitled to even more money under its contingent fee agreements with each class member, but settled for only 70 percent of the settlement fund so the class members could receive something.
 
 
 67
 The district court scheduled a hearing for September 22, 1989 to discuss the dispute. Rufus Cook explained to the court that he subtracted $350,000, along with 70 percent of the interest that accrued in the settlement fund, and distributed the remainder to the 19 eligible class members on a pro rata basis. Cook argued that the district court agreed to this distribution, and relied on language in the supplemental settlement agreements relating to contingent fees. Cook explained that he orally notified the court about the separate contingent fee agreements on two occasions. Cook also argued that his original letter to class members recommending settlement notified them that he intended to seek $350,000 from the fund, and that the class would only receive $150,000.
 
 
 68
 Judge Rovner was not persuaded. In an October 4, 1989 order, she vacated the March 20, 1989 order approving the supplementary settlement agreement, and reinstated the September 26, 1986 and December 6, 1986 orders. She ruled that Cook Partners could not take from the settlement fund any amount greater than the $128,705.68 originally awarded. Judge Rovner further pointed out that she was never made aware of Cook's belief that he was "entitled to award himself additional expenses beyond the award approved by the Court," and described Cook's efforts as "an intentional attempt to deceive the Court and circumvent its order rejecting his request for $350,000 in expenses." The court went on to calculate the exact amount to which each class member was entitled, and ordered Cook Partners to file by November 30 a report certifying that those amounts had been properly distributed.
 
 
 69
 Instead of distributing the funds according to the October 4, 1989 order, Cook Partners filed a notice of appeal with this court, and filed a motion for reconsideration in the district court. Cook argued that the district court lacked jurisdiction to enter the October 4 order, and that it was entitled to further evidentiary hearings on the expense petition. On November 20, 1989, Judge Rovner, in an extensive and thorough memorandum opinion and order, denied Cook Partners' motions.
 
 
 70
 On January 2, 1990, when the district court learned Cook Partners still had not distributed the settlement funds in accordance with the October 4 order, the court issued a rule to show cause why Cook should not be held in contempt. Cook's January 24 written response argued he should not be held in contempt because 1) the district court lacked jurisdiction to enter its October 4, 1989 order; 2) the court of appeals might conclude that Cook had not been dealt with fairly by the district court; and 3) he was entitled to an evidentiary hearing regarding expenses prior to the October 4 order. Cook also argued that due process entitled him to a hearing before he could be held in contempt, and that Judge Rovner would be a "material witness" at the hearing and therefore should recuse herself from the matter. Finally, Cook asked the court for a stay of its October 4 order pending appeal.
 
 
 71
 The eligible class members, now represented by appointed guardian ad litem, filed a memorandum in support of a contempt finding and the imposition of monetary sanctions to enforce the October 4 order. On April 2, 1990, the district court issued an opinion and order denying Cook's request for a stay and finding Cook in civil contempt. The court found that Cook knowingly violated the October 4 order, and that no evidentiary hearing was required because the only relevant factual issue--whether Cook Partners complied with the order--was already resolved. The court expressed concern for the class members, who still had not received their award, and concluded that the only way to ensure Cook Partners' compliance with its settlement ruling was to raise "the specter of contempt":
 
 
 72
 The Court regrets that well over a year after it made a determination as to the distribution of the common fund, the class members still have not received their payments. The strategy of Cook Partners has been to circumvent the Court's orders where possible, and to delay where circumvention is not possible. Cook Partners has demonstrated that when it disagrees with the Court's rulings, it believes it has the right to ignore them. It appears, therefore, that only through its contempt power is the Court able to secure enforcement of its orders. It is now time that the class members receive their compensation, and the Court can tolerate no further delays.
 
 
 73
 Judge Rovner gave Cook Partners until April 10, 1990 to pay the amounts due plus interest. Cook's failure to comply would trigger a fine of $100 per day, increasing by an additional $100 per day for each additional day that Cook did not disburse the funds. Cook failed to comply, and on April 12, 1990 the district court placed Cook in contempt and ordered the daily fine paid to the guardian ad litem on behalf of class members. Cook still has failed to disburse the funds, nor has he paid the civil contempt fine, which at oral argument was believed to be around $100,000. Cook appealed the contempt ruling, and that appeal was consolidated with his earlier appeal from the October 4, 1989 order. We now turn to Cook's arguments on appeal.
 
 II.
 
 74
 A. Appeal from the October 4, 1989 Order (No. 89-3440).
 
 
 75
 Cook Partners contends, as it did in its motion for reconsideration, that Judge Rovner lacked jurisdiction to rescind its March 20, 1989 order agreeing to the supplementary settlement agreement. Cook argues that the Federal Rules of Civil Procedure do not allow a court to alter or amend a decision six months after judgment is entered unless there is fraud. Cook contests the district court's assertion that it was not aware Cook intended to enforce its contingent fee agreements, and thus contends there was no fraud on the court.
 
 
 76
 As the district court correctly pointed out in its denial of Cook's motion for reconsideration, the supplemental settlement agreement signed by the court specifically provided for jurisdiction to remain in the district court: "The court retains jurisdiction of this matter to assure compliance by all parties with the obligations which accrue upon 'final judicial approval' of the Settlement Agreement." The question of whether Cook Partners properly disbursed settlement funds to class members falls squarely within this clause, and jurisdiction therefore was retained in the district court to consider class members' complaints about Cook Partners' proposed distribution. The district court's explicit retention of jurisdiction is consistent with its responsibility, pursuant to Fed.R.Civ.P. 23, to protect the interests of class members. Fed.R.Civ.P. 23(e) states that "[a] class action shall not be dismissed or compromised without the approval of the court." In Brady v. Sullivan, 893 F.2d 872, 877 (7th Cir.1989), we noted that " 'district courts who enter judgment pursuant to [a settlement agreement] necessarily have the power to mandate compliance with it,' " (quoting United States v. Baus, 834 F.2d 1114, 1127 (1st Cir.1987), and added that "[t]he court's intent to retain jurisdiction need not be explicitly stated, but can be inferred," citing McCall-Bey v. Franzen, 777 F.2d 1178, 1188 (7th Cir.1985). Retention of jurisdiction is enhanced when the court is attempting to protect members of a class action:
 
 
 77
 In a class action, the district court has a duty to class members to see that any settlement it approves is completed, and not merely to approve a promise ... to pay the relief to which it has decided class members are entitled.
 
 
 78
 In re Corrugated Container Antitrust Litigation, 752 F.2d 137, 141 (5th Cir.1985).
 
 
 79
 Because the district court explicitly retained jurisdiction over the appropriate disbursement of the settlement funds, we need not decide whether Cook's conduct was fraudulent, or whether, as Cook claims, the district court misconstrued the terms of the supplemental settlement agreement. We wish to emphasize, however, that after our review of the record, we do not find fault with Judge Rovner's characterizations of Cook's conduct. Judge Rovner made a reasonable determination regarding the expenses to which Cook was entitled. She withdrew her original orders and agreed to the supplemental settlement agreement only because she understood that it did not change her decision on the amount of expenses due Cook. Cook's conduct in attempting to enforce contingent fee agreements, some of which were obtained from unsuspecting class members after the expense determination adverse to Cook, was a clear attempt to circumvent the district court's decision. By not informing the court and class members, prior to approval of the supplemental settlement agreement, that he intended to take $350,000 from the settlement fund, Cook at the very least misled the court. Judge Rovner was correct to reprimand Cook for his deceptive and unprofessional performance.
 
 
 80
 Cook argues that he is entitled to enforce the contingent fee agreements he reached with various class members, and that he should receive credit, not condemnation, for waiving his right to statutory attorney's fees and to full contingent fees in exchange for receiving just 50 percent of his costs. Placed in context, Cook's contention is preposterous. In this case, Cook sought expenses in the amount of $350,000. Following a careful examination of Cook's request, which included a comparison with expenses awarded in similar cases, and concern over Cook's close relationship (even ownership) of businesses to which he claimed to owe money, the court awarded Cook Partners more than one-fourth of the settlement fund. Cook appealed the award without informing class members. He dropped the appeal in exchange for the Chicago Park District dropping its appeal on the immediacy of payment into the settlement fund. Then, without informing the court, Cook kept the $350,000 he originally asked for, relying on contingent fee agreements the district court knew nothing about. Finally, he disbursed money to class members without informing them that he had entered into a supplementary settlement agreement through which he was retaining approximately 45 percent more of the fund than he was awarded by the district court. Despite Cook's protests, his conduct was clearly not "consistent with the highest standards of our profession." See Evans v. Jeff D., 475 U.S. 717, 728, 106 S.Ct. 1531, 1538, 89 L.Ed.2d 747 (1986).
 
 
 81
 Cook first takes issue with the district court's remark that Cook's willingness to forego attorney's fees was motivated in part by his recognition that his representation was inadequate. That finding was amply supported by the record, which included this court's previous criticism of the "shoddy" and "unprofessional" statistical analysis he used, which perhaps was because the work's supervisor "operated out of [Cook's] office, factors which suggest her closer responsiveness to the strategic needs of the litigation rather than the detachment crucial to objective survey science." Alexander v. Chicago Park District, 709 F.2d 463, 468 (7th Cir.1983), cert. denied 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). The court also took notice that Judge Shadur in a separate case ruled that Cook Partners was not qualified to prosecute a class action, and warned Cook Partners of possible sanctions for misrepresenting facts to the court. Armstrong v. Chicago Park District, 117 F.R.D. 623, 631-32 (N.D.Ill.1987), aff'd 886 F.2d 332 (7th Cir.1989). The court later found that Judge Plunkett separately had affirmed the disqualification of Cook Partners as counsel for a debtor in a bankruptcy case because Cook Partners concealed an ownership interest in the debtor. See In re Albright, 95 B.R. 560 (N.D.Ill.1989).
 
 
 82
 The district court was required under Fed.R.Civ.P. 23(e) to scrutinize any fee agreements that would be enforced as part of the settlement, because those agreements necessarily put counsel and clients in an adversary relationship. As the Third Circuit put it in Dunn v. H.K. Porter Co., 602 F.2d 1105, 1109 (3d Cir.1979):
 
 
 83
 When a contingent fee contract is to be satisfied from a settlement fund approved by the trial judge pursuant to Fed.R.Civ.P. 23(e), the court has an even greater necessity to review the fee arrangement for this rule imposes upon it a responsibility to protect the interests of class members from abuse. In such circumstances, the role of the attorneys is drastically altered; they then stand in essentially an adversarial relation to their clients who face a reduced award to the extent that counsel fees are maximized.
 
 
 84
 In fact, greater scrutiny was warranted here because several fee agreements were not entered into until after the district court's expense determination, as the litigation was "reaching its culmination," when Cook was trying to find another way to get the $350,000. See Pete v. United Mine Workers of America, 517 F.2d 1275, 1291 (D.C.Cir.1975). But Judge Rovner never had a chance to examine those contingent fee agreements because they were not called to her attention. The district court was led to believe Cook only desired a more "perfunctory" settlement agreement that did not leave the court's criticism of his representation on the record, and that the supplementary settlement agreement did not substantively change the nature of the agreement. Opposing counsel stated by affidavit that, had he known of Cook's intent to keep $350,000 by entering into the supplementary settlement agreement, he would have considered it a "fraud upon the Court" and refused to participate. The district court never would have approved such a circumvention of her original decision on expenses. Surely Cook knew that. Thus Cook hid his intent to enforce the contingent fee agreement from the court; through two hearings and numerous briefs, Cook never told the court he would enforce contingent fee agreements regardless of the court's final decision on expenses. His reliance on a cryptic reference to contingent fees in the supplemental settlement agreement was not sufficient. Cook's deception, in combination with the requirement of district court approval of contingent fees with members of a class action, renders the agreements unenforceable.
 
 
 85
 The district court properly dismissed Cook's frivolous contention that "statutory costs" pursuant to 42 U.S.C. Sec. 1988 were relevant in determining the expenses due Cook:Plaintiff's counsel waived any entitlement to fees and costs under Sec. 1988 by entering into the settlement agreement. If they had not done so, defendants likely would not have agreed to settle the case.
 
 
 86
 The court went on to cite Skelton v. General Motors Corp., 860 F.2d 250 (7th Cir.1988), cert. denied --- U.S. ----, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989), where we held that the district court, applying equitable principles, would determine the appropriate fees when "a settlement fund [was] created in exchange for release of the defendant's liability both for damages and for statutory attorney's fees ..." Id., 860 F.2d at 256. Therefore, the case law regarding statutory fees under 42 U.S.C. Sec. 1988 is largely irrelevant here.
 
 
 87
 Cook's final argument is equally frivolous. Cook contends that he was never granted an evidentiary hearing on his costs petitions, in violation of his due process rights. The district court recounted the "hundreds of pages of documents" it reviewed following two hearings and three separate filings relating to expenses. Cook had ample opportunity to make his case, and the court was not required to give him more chances simply because he disagreed with its final decision.
 
 
 88
 B. Appeal from the Civil Contempt Order (No. 90-1807).
 
 
 89
 There is no question that Cook disobeyed the court's October 4, 1989 order to disburse settlement money to class members in the amounts determined by the court, so there was no need for the "evidentiary hearing" requested by Cook. See generally Matter of Grand Jury Proceedings Empaneled May 1988, 894 F.2d 881, 882-83 (7th Cir.1989). The success of Cook's challenge to the civil contempt fines is for the most part contingent on this court reversing the district court's October 4, 1989 order, since Cook again attacks the district court's jurisdiction to enter that order. Because we affirm that order, Cook's challenge to the contempt citation also must fail.
 
 
 90
 However, we can affirm the contempt citation without even reaching the issue of the order's validity. Parties must obey court orders regardless of their validity, unless the orders are stayed pending appeal. In effect, Cook's only reason for disobeying the order is that he believed it to be wrong. Even if that were true, Cook was obligated to obey the order or be held in contempt:
 
 
 91
 If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.
 
 
 92
 Maness v. Meyers, 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975).
 
 
 93
 On appeal, Cook acknowledged that class members still have not received full payment, and admitted that the money he took from the fund without authorization has already been spent and is no longer available for disbursement. For the class members who still await full payment, now 12 years after the onset of this litigation, that is most unfortunate. This opinion sets forth in some detail the unprofessional manner in which Cook Partners has prosecuted this litigation. Although many of the issues raised by Cook are frivolous, we see no point in heaping further sanctions on a lawyer and law office facing large contempt fines. However, a copy of this opinion will be submitted to the Illinois Attorney Registration and Disciplinary Commission with a suggestion that it investigate the conduct of Rufus Cook and Cook Partners in this litigation. Circumventing and ignoring district court orders in the manner described above will not be condoned.
 
 
 94
 For all of the foregoing reasons, the October 4, 1989 and April 2, 1990 orders of the district court are, in all respects,
 
 
 95
 AFFIRMED.
 
 
 
 [1]
 For a more detailed summary of the early stages of this even then "convoluted" litigation, see Alexander v. Chicago Park District, 773 F.2d 850, 852-53 (7th Cir.1985), cert. denied 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986)