**In the Matter of Rufus COOK, Respondent.**

**No. D–217.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 6, 1994.

Decided Jan. 30, 1995.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

Attorney Disciplinary Proceeding.

EASTERBROOK, Circuit Judge.

Rufus Cook, a member of this court's bar, represented the plaintiff class in a long-running action against the City of Chicago. After losing a number of preliminary skirmishes, see *Alexander v. Chicago Park District,* 709 F.2d 463 (7th Cir.1983), *Alexander v. Chicago Park District,* 773 F.2d 850 (1985), Cook entered into a settlement on behalf of one subclass, with 19 members, and abandoned efforts to obtain relief for the remaining plaintiffs. Chicago agreed to pay $500,000, a sum that included all costs and attorneys' fees, in exchange for a release. Because this was a class action, Fed.R.Civ.P. 23(e) required approval of the settlement and all claims to the fund.

Cook waived any claim for attorneys' fees but sought to recover $350,000 in expenses, which would have left just $150,000 for distribution to the class. Judge Rovner disapproved this allocation of the proceeds, observing that the expenses were inflated—and suspect as well, because much of the work for which reimbursement was claimed had been done by firms in which Cook or his former wife had an ownership interest. Judge Rovner concluded that the combina-tion of unusually high expenses and self-dealing was intolerable and curtailed the award accordingly. Both sides took appeals—Cook in search of a larger award, and Chicago in search of assurances that it could withhold payment until the details of distribution had been worked out. Before we could decide the appeal, another settlement was reached. This agreement, reproduced in *Alexander v. Chicago Park District,* 927 F.2d 1014, 1019–21 (7th Cir.1991), called for both sides to dismiss their appeals, for the district court to vacate its opinion (which had been highly critical of Cook's ethics and performance), and for the district court to approve the original settlement. The agreement, which the district court entered as a judgment, provided: "Plaintiffs' counsel is hereby awarded statutory costs of $128,705.68", the same amount Judge Rovner originally had approved.

Chicago then disbursed the funds. Cook remitted $150,000 to the class members, keeping $350,000 for himself. When she found out what Cook had done, Judge Rovner was appalled. She ordered Cook to pay the residue, and when he did not pay she held him in contempt of court. We affirmed this decision, rejecting both procedural and substantive defenses. Cook's procedural defense was that Judge Rovner had not afforded him the hearing he requested; we held that no factual hearing was necessary (there had been plenty of argument), because Judge Rovner was in possession of the documents and Cook had not identified any disputed issue of material fact requiring an evidentiary hearing. Cook's substantive defense was that he kept the $350,000 not under the court's order but under contingent-fee contracts with the plaintiffs, contracts that entitled him to full reimbursement for costs. We concluded that Judge Rovner was entitled to find that she had never been notified of these agreements. Moreover, it appeared to us, as it had to Judge Rovner, that Cook "has demonstrated that when [he] disagrees with the Court's rulings, [he] believes [he] has the right to ignore them." 927 F.2d at 1022. When told to pay the correct amount, Cook neither paid nor sought a stay; he simply disobeyed the order. (He has since asserted

that, by the time the judge instructed him to pay the additional $221,294.04 to the class, he had spent the money and could not comply. But he did not tell this to Judge Rovner, let alone request an evidentiary hearing on this subject in a timely fashion, even though impossibility would have been a defense to the contempt citation. For current purposes, then, ability to comply at the critical time is established. *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983).)

At the conclusion of the opinion affirming the order holding Cook in contempt of court appears the passage that gives rise to the current proceeding:

> This opinion sets forth in some detail the unprofessional manner in which Cook Partners has prosecuted this litigation. Although many of the issues raised by Cook are frivolous, we see no point in heaping further sanctions on a lawyer and law office facing large contempt fines. However, a copy of this opinion will be submitted to the Illinois Attorney Registration and Disciplinary Commission with a suggestion that it investigate the conduct of Rufus Cook and Cook Partners in this litigation. Circumventing and ignoring district court orders in the manner described above will not be condoned.

927 F.2d at 1025. The state's disciplinary commission (the ARDC) opened an investigation and compiled a large record. But it did not reach a decision. Cook objected to any consideration of Judge Rovner's findings, and the ARDC issued a subpoena requiring Judge Rovner to appear and submit to cross-examination about the proceedings in her court and the rationale for her findings. Not surprisingly, she declined, observing that federal judges speak through their opinions, and that their mental processes are not subject to examination. *Fayerweather v. Ritch,* 195 U.S. 276, 306–07, 25 S.Ct. 58, 67–68, 49 L.Ed. 193 (1904). The ARDC's hearing panel then excluded from evidence the district court's findings of fact and conclusions of law, its opinions, and even the transcript of proceedings in the federal case. Following this decision, the Administrator of the ARDC withdrew the complaint, and the inquiry pe-

tered out. The failure of the ARDC to complete its investigation led us to open a disciplinary proceeding of our own. We have received the evidentiary record compiled by the ARDC and have held oral argument. Fed.R.App.P. 46(b), (c). Cook was offered an opportunity to make a statement but declined to do so. The case is ready for decision.

■ On observing what appears to be misconduct by a member of the bar, this court traditionally has referred the matter to state officials. Although it may seem incongruous for federal judges to ask state officials to inquire into conduct in federal proceedings, three reasons underlie our approach. First, state bars are much larger than federal bars, and with size has come the development of the means to investigate charges of misconduct and resolve factual disputes. Second, for most attorneys federal cases represent a small portion of their practices, and what appears to the federal court to be an isolated incident may appear to the state bar to be part of a pattern of conduct with darker overtones. Or the reverse—what appears serious to the federal court may be the only blot on a clean record and therefore may not deserve discipline. Either way, the state bar has the superior perspective. Third, because principles of cooperative federalism have led the federal courts to extend members of the state bar an almost automatic right to practice in federal court, acts in federal court ought to be as salient to the state disciplinary officials as acts in state court. Cooperative federalism is reciprocal.

The response of the ARDC to the reference in this case gives us pause about the continuing vitality of our practices. New evidentiary proceedings were not necessary. Findings of fact and law had been made (and affirmed) in the federal litigation. Obtaining the broader picture was potentially much more important. But the ARDC did not attempt to place Cook's delicts in the context of his career; it viewed them in isolation. And having begun an independent factual inquiry, it failed to carry through. It must have been obvious to everyone involved in the ARDC's proceedings that Judge Rovner would not appear as a witness. Inquiry be-

neath the surface of a judge's opinion is forbidden. If the ARDC thought that it needed to make an independent assessment of the facts, it could have proceeded using the documents and depositions it had collected. Whether Cook violated his fiduciary responsibility to the class, whether he violated the terms of the judgment—these and other issues lay open to determination on the record. But the ARDC refused to decide them. Taking the position that unless the judge appears as a witness it will not adjudicate a charge of misconduct, in federal court, by a member of its bar, is equivalent to taking the position that it will disregard misconduct in federal court, period. This cannot be described as a cooperative approach.

 Indeed, the ARDC's belief that the questions of fact and law resolved in the contempt proceedings were open to reexamination is worth some thought. Cook understandably wanted to avoid the force of these findings, and he sought to wage a collateral attack on them. Ordinarily a suspicion of misconduct is just that: the court observes questionable practices by an attorney, but the attorney, not a party to the case, is entitled to an independent factual inquiry. Cook, however, was a party to the contempt proceeding. The findings bind him *in personam.* He litigated, lost, and may not have a second bite at the apple. True, the ARDC was not a party to the contempt proceeding, and Illinois does not use offensive nonmutual issue preclusion in attorney disciplinary proceedings. *In re Owens,* 125 Ill.2d 390, 126 Ill.Dec. 563, 532 N.E.2d 248 (1988). But *Owens* gives reasons that do not apply to federal judgments. The Supreme Court of Illinois explained that it believes the procedures of the ARDC to be more thorough—and more subject to its control—than ordinary civil litigation. A state may allocate decisionmaking authority among its own tribunals as it pleases; it is not free to prefer its internal processes to those of the federal courts and to decline to respect federal judgments.

 Although 28 U.S.C. § 1738, which implements the Full Faith and Credit Clause of the Constitution for federal litigation, does not in terms apply to the states, the Supreme Court of the United States has long assumed that state tribunals must give federal judgments the same force that federal courts give them. *Dupasseur v. Rochereau,* 88 U.S. (21 Wall.) 130, 134, 22 L.Ed. 588 (1874); *Embry v. Palmer,* 107 U.S. 3, 9, 27 L.Ed. 346 (1883); *Metcalf v. Watertown,* 153 U.S. 671, 14 S.Ct. 947, 38 L.Ed. 861 (1894); *Stoll v. Gottlieb,* 305 U.S. 165, 167, 59 S.Ct. 134, 135, 83 L.Ed. 104 (1938). See also *Kern v. Hettinger,* 303 F.2d 333 (2d Cir.1962); *Restatement (2d) of Judgments* § 87 (1982); Ronan E. Degnan, *Federalized Res Judicata,* 85 Yale L.J. 741, 755–73 (1976). Offensive nonmutual issue preclusion applies in federal courts. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The disposition of a contempt proceeding is therefore binding in a federal disciplinary action against the attorney held in contempt. One adjudication per issue is enough. *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). This conclusion does not necessarily call for any particular discipline; selection of the disposition calls for an independent exercise of judgment. *Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957); cf. *In re Reinstatement of Leaf,* 41 F.3d 281, 284 (7th Cir.1994). Illinois is free to conclude that defrauding a judge and bilking one's clients does not diminish an attorney's standing at its bar. But of course this is not what it concluded; instead it summarily disregarded not only Judge Rovner's findings but also the federal judgment itself. Because we are not reviewing the ARDC's decision, we need not decide whether the Full Faith and Credit Clause should have led it to act otherwise. Despite *Dupasseur* and later cases, there remains some question about the extent to which states must respect federal decisions about subsidiary issues. See Stephen B. Burbank, *Interjurisdictional Preclusion, Full Faith and Credit and Federal Common Law: A General Approach,* 71 Cornell L.Rev. 733, 791–97 (1986). We trust that in the future the ARDC will give this subject close consideration.

 What we must decide today is the proper sanction. (We decline Cook's invita-

tion to revisit the factual findings and conclusions of the district court, which have already been reviewed on direct appeal.) The panel that heard the appeal from the contempt adjudication saw "no point in heaping further sanctions on a lawyer and law office facing large contempt fines" but also anticipated that the ARDC would choose a disposition appropriate to Cook's circumstances, an assumption that proved unwarranted. Our task has been complicated by the passage of time. The contempt of court occurred in 1989 and 1990. If Cook had been suspended then from the practice of law in the federal courts, he likely would be reinstated by now. He has repaid the class, and Judge Rovner has vacated the additional fines, which would have made him eligible for reinstatement. (We have no indication that Cook has misbehaved in any state or federal tribunal since 1990.) The false start in the ARDC—coupled with the surprising fact that the district court, where the misconduct occurred, has never opened its own disciplinary proceeding—has dragged things out. The standard alternatives to suspension, public censure and reprimand, are inapt because the citation in contempt and its affirmance in a published opinion of this court served that function. Yet the implication of this assessment—that no discipline at all is appropriate today— would leave an adjudicated contemnor in good standing and would reward delaying tactics. That outcome, too, is unsettling.

It may be that the fines (now remitted) for contempt are a sufficient response to Cook's transgressions against the authority of the court. For current purposes, we are more concerned about his transgressions against his clients, the members of the settlement class. Persons vicariously represented in class litigation depend particularly on judges to protect them from overreaching by counsel, for they did not choose their lawyer. Cook's approach to the disciplinary proceedings tells us that clients remain in need of protection. Recall his substantive defense: that taking $350,000 for himself was authorized not by the court's order but by his agreements with members of the class. Cook continues to advance this position, and we therefore must assume that it represents his ideas about lawyers' duties to the persons they represent. Whether or not Cook mentioned the agreements to Judge Rovner by phone, it is undisputed many of the agreements were not on file, as local rules require. N.D.Ill.General R. 39(D), (E), (F). Some of the agreements had been signed after the settlement (indeed, after Cook's request for $350,000 had been disapproved), and the plaintiffs apparently were not told that the only purpose of the document was to surrender the bulk of the money to which they were entitled. Only theft from a trust fund would be a clearer breach of an attorney's fiduciary duty to his client—yet this is Cook's *defense* to the charge of misconduct. Cook has not apologized for his actions, and the nature of his justification implies that his clients remain in need of judicial protection.

What is more, even if the class members had authorized compensation, any sums paid as part of the settlement of a class action required the district court's approval under Rule 23(e). Whether approval would have been forthcoming is doubtful. Cases such as *Skelton v. General Motors Corp.,* 860 F.2d 250, 253 (7th Cir.1988), observe that, once a common fund has been created, lawyers and clients become adversaries competing for shares of the pot, which requires judicial monitoring of the lawyers' claims. See also, e.g., *Democratic Central Committee of the District of Columbia v. Washington Metropolitan Area Transit Commission,* 38 F.3d 603 (D.C.Cir.1994) (in a common-fund case "attorneys' fees provisions never [come] within the competence of the parties to establish"). We know what the district judge thought about the size of Cook's claim. But Cook avoided the scrutiny required by Rule 23(e) and *Skelton.*

Our court seeks to protect litigants from careless or unethical conduct by members of the bar. We have suspended from practice lawyers who fell behind in filing briefs or who did not exert themselves in protecting their clients' interests. E.g., *United States v. Gerrity,* 804 F.2d 1330 (7th Cir.1986); *In re Beck,* 902 F.2d 5 (7th Cir.1990); cf. *United States v. Myong Hwa Song,* 902 F.2d 609 (7th Cir.1990). It would be incongruous to permit a lawyer who has diverted funds from clients to himself to remain in good standing,

while mere lassitude leads to suspension from practice. We hereby suspend Rufus Cook from membership in our bar. After two years Cook may apply for reinstatement. Any application must be accompanied by a demonstration that he is then in good standing in all other jurisdictions where he is admitted to practice.