*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

In re: CAROLE H. SQUIRE,

                    *Appellant.*

                                        No. 08-4401

————————————

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00053—Sandra S. Beckwith, District Judge.

Decided and Filed: August 3, 2010

Before: MARTIN, CLAY, and KETHLEDGE, Circuit Judges.

————————————

**COUNSEL**

**ON BRIEF:** Percy Squire, LAW OFFICE, Columbus, Ohio, for Appellant.

————————————

**OPINION**

————————————

BOYCE F. MARTIN, JR., Circuit Judge. Carole H. Squire, a former judge on the Franklin County Domestic Relations and Juvenile Court, appeals an order of disbarment entered against her by the United States District Court for the Southern District of Ohio. Following an investigation, Squire was suspended from the practice of law by the state of Ohio for two years, with twelve months of that suspension stayed on the condition that she commit no further disciplinary violations within the suspension period. Shortly thereafter, the district court reciprocally disbarred Squire from practicing in federal court.

Squire claims that she should not have been reciprocally disbarred because she was denied due process during her state disbarment proceeding when Ohio refused to reveal to Squire the names of every witness with whom the Ohio disciplinary counsel for the Supreme Court of Ohio, Jonathan Coughlan, spoke during the investigation. She further alleges that

1

the findings of the Ohio Supreme Court are against the weight of the evidence presented and that her investigation was nothing more than the product of political machinations between members of the Ohio Supreme Court and the Franklin County Domestic Relations and Juvenile Court.[1]

However, failing to disclose to Squire the names of every person with whom Coughlan may have spoken during his investigation did not deprive Squire of her opportunity to present a meaningful defense. Moreover, there is not such an infirmity of proof establishing her misconduct as to give rise to a clear conviction that we cannot accept as final the conclusion of the Ohio Supreme Court. Therefore, we AFFIRM the district court's imposition of reciprocal discipline.

## I.[2]

Squire was elected for a six-year term on the Franklin County Domestic Relations and Juvenile Court in Columbus, Ohio and began her term in January 2001. On August 27, 2004, Squire sent a letter to Judge Thomas Moyer, then-Chief Justice of the Supreme Court of Ohio, alleging, among other things, that other judges on the court were interfering with Squire's cases and failing to perform their jobs adequately. It is unclear from the record whether Chief Judge Moyer responded or took any action as a result of receiving Squire's letter, although Squire claims that Chief Judge Moyer did nothing.

Some time after that, Lori McCaughan, a lawyer arguing a case before Squire, consulted Judge James Mason, another judge on the Franklin County Domestic Relations and Juvenile Court, about the case. McCaughan complained that: (1) Squire repeatedly refused to hold a hearing in connection with an ex parte civil protection order, as required by Ohio law; (2) Squire refused to accept service of an emergency custody order issued by a fellow judge, Judge Dana Preisse; (3) Squire had sequestered a child

---

[1]This Court is not a stranger to political imbroglios perpetrated in the state of Ohio. *See Brunner v. Ohio Republican Party*, 129 S. Ct. 5 (2008).

[2]Some facts are drawn from an earlier opinion based upon the same facts as this case. *See Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006).

involved in a custody dispute in her chambers; (4) Squire refused to accept service of McCaughan's affidavit of disqualification disqualifying Squire from McCaughan's case; and (5) Squire had behaved inappropriately towards attorneys and their clients who appeared in Squire's courtroom.

Sometime prior to October 5, 2005, Coughlan notified Squire that she was under investigation for allegedly violating the Canons of Judicial Ethics and sent her a draft complaint. According to Coughlan, the draft complaint contained the names of all persons who had filed a grievance and the names of all potential witnesses in the formal proceeding against Squire. However, Coughlan did not provide the names of every person with whom he had spoken during the course of conducting his investigation. Squire demanded that Coughlan provide the names of every complainant, but Coughlan responded that Squire had been provided with all of the complainants' names. He further asserted that no particular person filed a grievance for one of the two counts charged, as the facts underlying that claim came to his attention during the course of his investigation. A probable cause hearing was set for October 7 before a three-member panel of the Board of Commissioners on Grievances and Discipline.

On October 5, Squire filed suit against Coughlan in the United States District Court for the Southern District of Ohio, alleging that Coughlan had violated her due process rights under the Fourteenth Amendment and denied her a meaningful opportunity to respond to the draft complaint by not providing her the names of all the complainants and witnesses against her. Squire requested a temporary restraining order to prohibit Coughlan from proceeding with the hearing and a preliminary and permanent injunction requiring Coughlan to provide the requested names and attorney's fees. The district court dismissed the case *sua sponte* for lack of jurisdiction, finding that it was barred under the *Younger* abstention doctrine from considering Squire's federal case because Squire's state disciplinary proceedings were ongoing. *See Squire*, 469 F.3d at 555.

Squire filed a second complaint with the district court on October 6 that was identical to her first complaint, adding an additional defendant, Lori J. Brown, the

assistant disciplinary counsel. Because the Board's probable cause hearing was set for October 7, the district court held an evidentiary hearing on the evening of October 6 and again dismissed the complaint for lack of jurisdiction under *Younger*. *Id.* The district court further found that, even if it had jurisdiction, Squire's claim would fail on the merits. *Id.* Squire then filed a motion with the Board to obtain the names of everyone with whom Coughlan had spoken during the investigation against her, alleging that due process entitled her to know the identity of all witnesses against her and the opportunity to avoid public disclosure of sensitive facts. The Board denied her request.

On October 10, Coughlan made public the formal complaint against Squire, based upon two cases heard by Squire, *Allison v. Patterson* and *Camburn v. Camburn*. This complaint presented claims that, in both cases, Squire: (1) repeatedly refused to hold a hearing in connection with an ex parte civil protection order as required by Ohio law; (2) was discourteous to attorneys; (3) had improper ex parte communications; and (4) failed to disqualify herself when appropriate. Coughlan amended the complaint on March 3, 2006 to include two additional counts rising from two other cases heard by Squire, *Fleming v. Fleming* and *In re Tylee Delibro*. The additional counts claimed that Squire: (1) made false and inflammatory statements in her entry to disqualify herself from the *Fleming* case; (2) did not follow statutory procedural requirements; (3) had improper ex parte communications; (4) was discourteous to attorneys; (5) wrongly disqualified herself from a case when it was not appropriate; and (6) refused to consider all matters before her in relation to a motion for continuance. In total, the amended complaint listed four counts of misconduct involving forty violations of the Code of Judicial Conduct and twelve violations of the Code of Professional Responsibility.

A three-member panel of the Board heard the case over eight days of proceedings in August, September, and October 2006. Twenty-eight witnesses testified, and the parties presented more than one hundred exhibits. The panel made unanimous findings of misconduct on all counts and recommended that Squire be suspended from the practice of law for twelve months, with six months stayed on the condition that she commit no further disciplinary infractions within the one-year suspension period. The

Board accepted the panel's findings and recommended that Squire be suspended from law practice for two years, with one year of her suspension stayed.

On November 15, 2007, the United States District Court for the Southern District of Ohio, in accordance with Rule II of the the Model Federal Rules of Disciplinary Enforcement, entered an order that Squire show cause why the district court should not impose identical discipline upon her. Thereafter, the district court suspended Squire from the practice of law in that court for two years with twelve months of the suspension stayed on the condition that she commit no further disciplinary violations during the suspension period. Squire timely appealed.

**II**.

On appeal, Squire challenges the sufficiency of the due process protections she was afforded in her state disbarment proceedings. We are "precluded by the *Rooker-Feldman* doctrine from reviewing any claims that challenge the sufficiency of the proceedings afforded [Squire] by the State of Ohio, as opposed to the process afforded [Squire] in her federal disbarment proceedings." *In re Cook*, 551 F.3d 542, 547 (6th Cir. 2009) (holding that the *Rooker-Feldman* precluded an attorney from challenging the Supreme Court of Ohio's disbarment proceeding). "The pertinent question in determining whether a federal district court is precluded under the *Rooker-Feldman* doctrine from exercising subject-matter jurisdiction over a claim 'is whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment.'" *Id*. at 548 (quoting *Lawrence v. Welch*, 531 F.3d 365, 368 (6th Cir. 2008)). "This is true regardless of whether the party challenges the validity of the state court judgment on constitutional grounds." *Id.* (citing *Lawrence*, 531 F.3d at 369).

Although we do not directly review Ohio's decision to disbar Squire, "because the district court relied on the record developed by the state courts, this Court must consider whether alleged defects in those proceedings 'so infected the federal proceeding that justice requires reversal of the federal determination.'" *Id.* at 548-49 (quoting *In re Ruffalo*, 390 U.S. 544, 552-53 (1968)); *see also Lawrence*, 531 F.3d at 369. "Because

the requirements for admission and continued practice in federal and states courts are distinct, federal courts are not conclusively bound by state disbarment orders." *Cook*, 551 F.3d at 549 (citing *Theard v. United States*, 354 U.S. 278, 282 (1957)).

However "'a disbarment order handed down by a state court is entitled to due respect.'" *Id.* (quoting *Theard*, 354 U.S. at 282).  "Federal courts also have noted that there are sound practical reasons for deferring to state judgments in this context, explaining that 'state bars are much larger than federal bars, and with size has come the development of the means to investigate charges of misconduct and resolve factual disputes.'" *Id.* (quoting *In re Cook*, 49 F.3d 263, 265 (7th Cir. 1995)).

Therefore,

> federal courts should proceed on the presumption that federal courts ["should recognize the condition created by the judgment of the state court"] unless certain factors are present including:
>
>> 1.   That the state procedure from want of notice or opportunity to be heard was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Id.* at 549-550 (quoting *In re Selling*, 243 U.S. 46, 51 (1917)).  "Thus, federal courts may give considerable weight to the findings and conclusion of the state courts in such disciplinary matters, but it is ultimately the responsibility of the federal courts to determine whether a member of the federal bar is fit to practice in federal court." *Id*.

## **III**.

Squire alleges that Coughlan violated her due process rights by refusing to disclose to Squire the name of every person with whom he *may* have spoken during the course of his investigation. She further alleges that the record reveals an infirmity of proof as to her bad acts, which must give rise to a clear conviction that this Court could not accept as final the Ohio Supreme Court's conclusion to disbar her.[3]

### A.      **Due Process**

In our past cases involving disbarred or suspended attorneys who claimed either due process or inadequacy of the record violations, we have upheld a district court's decision to reciprocally disbar an attorney so long as the district court's reasoning in reaching its decision was not "totally invalid." *In re Ruffalo*, 370 F.2d 447, 453 (6th Cir. 1966) *rev'd on other grounds by Ruffalo*, 390 U.S. at 551.

Due process requirements are met where an appellant "attended and participated actively in the various hearings, and was afforded an opportunity to present evidence, to testify, to cross-examine witnesses, and to present argument." *Ginger v. Circuit Court for Wayne County*, 372 F.2d 620, 621 (6th Cir. 1967) (in which appellant attorney represented himself). Due process requirements are also met where an appellant is given "an opportunity to respond to the allegations set forth in the complaint, testify at length in her own defense, present other witnesses and evidence to support her version of events . . . , [and is] able to make objections to the hearing panel's findings and recommendations." *Cook*, 551 F.3d at 550.

Squire has not shown that her state proceedings deprived her of due process. The record unequivocally reveals that Squire was given notice of all the claims brought against her. In over eight days of hearings recorded in a transcript that runs several

---

[3]Squire alleges additional claims in passing that either do not fall within any of the enumerated categories that we may review or are obviously non-meritorious. Thus, we focus the majority of our opinion on the notion that Coughlan deprived Squire of her due process by failing to give her the names of every person with whom he spoke during his investigation, and the claim that the record provides inadequate proof that Squire acted inappropriately on the bench.

thousand pages long, she had ample opportunity to respond to the state's charges, to testify in her own defense, to present witnesses and evidence, and to make objections. Thus, under our prior precedent, she received due process. *See id.*

Squire claims, however, that due process entitles her to know the identity of every witness against her including, not only the name of every complainant and witness Coughlan called at the hearing, but also the names of every person with whom Coughlan spoke during the course of his investigation. However, she has provided no legal support for the notion that due process requires that Coughlan disclose the names of persons to whom Coughlan *may* have spoken about Squire during the course of the investigation, but who did not ultimately testify against Squire at her hearing. In her brief, Squire cites several Supreme Court cases to support this notion, but they are inapposite.[4] Neither the names of undisclosed individuals to whom Coughlan may have spoken, nor their statements, were part of the administrative record that resulted in Squire's disbarment and, thus, she did not need to know their names in order to prepare a meaningful defense.

Therefore, we find that failure to disclose the names of those persons to whom Coughlan may have spoken during the course of his investigation, but who were not part of the administration record resulting in Squire's disbarment and did not testify against

---

[4]Squire cites *Willner v. Committee on Character and Fitness*, 373 U.S. 96 (1963), in which the Supreme Court found that a bar applicant who was denied admission by the Committee of Character and Fitness without a hearing or even an explanation was denied due process because he was given no opportunity to confront his accusers or dispute their accusations. Unlike the *Willner* plaintiff, Squire was granted a full hearing before the panel. Additionally, prior to the hearing, Coughlan produced the name of every witness who testified against Squire at her hearing and every complainant who filed a complaint against her. Therefore, Squire had notice of each witness who testified against her at her hearing and an opportunity to confront them.

Squire also points to *Greene v. McElroy*, 360 U.S. 474 (1959), claiming that it guarantees her a due process right to discover the identities of all the persons with whom Coughlan spoke during his investigation. However, in *Greene*, despite the fact that the petitioner was granted a hearing and knew the charges against him, "petitioner had no opportunity to confront and question persons whose statements reflected adversely on him or to confront the government investigators who took their statements. Moreover, it seemed evident that the Board itself had never questioned the investigators and had never seen those persons whose statements were the subject of their reports." *Id.* at 479-80. Unlike the plaintiff in *Greene*, there is no evidence that Squire's panel relied on evidence not disclosed to her. Instead, Coughlan presented numerous witnesses whom Squire had full opportunity to examine.

Similarly, two other cases that Squire cites are factually inapposite because both involved instances where plaintiffs were either denied the opportunity to examine evidence or did not know the nature of the claims brought against them, *Morgan v. United States*, 304 U.S. 1 (1938); *Gonzales v. United States*, 348 U.S. 407 (1955), which is clearly not the case here.

her, was not a due process violation requiring reversal. Thus, we affirm the district court's finding.

## B.        Sufficiency of the Record

Coughlan's Amended Complaint listed four counts of misconduct involving forty violations of the Code of Judicial Conduct and twelve violations of the Code of Professional Responsibility. The transcript of Squire's hearing runs thousands of pages long and includes numerous witnesses who testified to Squire's misconduct. Although the specific incidents are too numerous to list individually, we will highlight misconduct from one count.[5]

In *Allison*, on November 5, Theresa Allison requested a civil protective order on behalf of her minor child and filed an amended complaint[6] that specifically enumerated allegations contained in the protective order. Although Ohio law required Squire to hold an ex parte hearing on the same day that the order was filed, she instead ignored Allison's repeated requests to make a decision regarding the order for several days.

A few days later, Judge Preiss granted Allison an emergency protective order. Nicole Hall, another attorney, served the emergency protective order on Patterson who was in Squire's conference room with the couple's child. Hall escorted the child to another floor to await Allison's arrival. However, shortly thereafter, Hall and the child were advised by other attorneys to return to Squire's courtroom and complied. According to the testimony of Allison's attorney, McCaughan, when Squire saw the child being led through the hallway towards her courtroom, she "swoop[ed] in and

---

[5] These examples above have been drawn solely from count 1. There are three other counts of misconduct by Squire that, while perhaps less egregious, contain similar acts of misconduct and only serve to further buoy the district court's decision to disbar Squire.

[6] The record is not clear regarding what day the amended complaint was filed, and it seems that it was never docketed, although these facts are not relevant. McCaughan testified that she requested leave to amend the complaint to include Allison's child as a protected party from the child's father, Patterson, on November 5th and Squire told her to proceed, though McCaughan admitted that she did not specifically remember filing it. However, Squire admitted in her testimony that the November 7th proceeding was set up to address both Patterson's and Allison's "each coming and asking for an ex parte civil protection order," (Trial Tr. vol. 5, 1258, Sept. 22, 2006), showing that Squire was aware of Allison's order. Squire also admitted to having seen the amended complaint on November 5th and November 7th. (*Id.* at 1272, 1277.) Thus, despite arguments to the contrary, it seems clear that Squire proceeded with the November 7th hearing in full knowledge of Allison's protective order and the amended complaint.

grabb[ed] [the child] . . . pull[ed] her" and "yelled" at Hall.  (Trial Tr. vol. 1, 114, Aug. 1, 2006.)  Squire allegedly "told [Hall] that it was an invalid order.  [Squire] kind of grabbed the child who was standing next to [Hall], and pulled [the child] over next to [Squire].  [Squire] told [Hall] that [Squire] was going to have [Hall] charged with kidnapping."  (*Id.* at 345.)  According to the record, Squire then "took service [of the emergency protective order] back from Mr. Patterson," (*id.* at 143) but she did not act upon it.[7]

After returning the child to her chambers, Squire went to the courtroom and began conducting a proceeding.  McCaughan was unsure whether an ex parte hearing or full hearing was taking place, as the hearing did not follow the typical procedures of an ex parte hearing, but it was taking place days before the full hearing was scheduled. When McCaughan asked multiple times for Squire to clarify what hearing was taking place, Squire gave conflicting answers.  (*Id.* at 118-119.)  At the end of the hearing, Squire granted custody of the child to a paternal grandmother who was not a party to either of the child protective orders or the emergency custody order, directly contravening Judge Preisse's emergency custody order granting custody to the mother, and contravening O.R.C. 3113.31(E)(1)(d) by allocating parental rights that had already been established.

Around that time and before her next scheduled appearance before Squire, McCaughan requested that Squire be disqualified from the case pursuant to O.R.C. 2710.03, and filed an affidavit with the Supreme Court of Ohio.  (*Id*. at 145.)  The next morning, McCaughan had another scheduled appearance in the *Allison* case before Squire.  Squire refused to allow McCaughan to serve her with the affidavit regarding the request for disqualification prior to calling McCaughan's case, though McCaughan informed her that she had filed it.  (*Id.* at 54-56.)  Despite McCaughan's repeated

---

[7]Squire contends that McCaughan's testimony is speculative because McCaughan has trouble recalling some of the dates and events surrounding the *Allison* case.  Although this is true, McCaughan was quite clear in her description of Squire's behavior towards the child, in her recollection of the grant of custody to the child's grandmother who was not a party to the case, in specifying improper ex parte communications with the grandmother, and Squire's refusal to receive service of an affidavit disqualifying Squire from the case, which constitute the key charges in this count.

requests that Squire terminate the hearing in compliance with the affidavit of disqualification, Squire refused to recuse herself and proceeded. Additionally, although Allison was in tears, Squire forced her to testify, saying "We're going to hear your case now with or without counsel." (*Id.* at 157-58.) Squire proceeded to conduct what appeared to be a full hearing, despite the fact that the full hearing was scheduled to take place two weeks later. (*Id.* at 158.) Squire forced Allison to present her case without witnesses and without evidence. (*Id.*)[8]

Squire also contacted Jennifer Thompson, another attorney who assisted Allison in her case, and told her that Thompson

> had caused [Squire] to send a child to the wrong home . . . and that [Squire] had made the wrong decision based on the fact that she had to deal with my case and spend so much time with me, and that [Thompson] would have to answer to God for [her] actions in this case, and that [Squire] had made her peace with God, and that God would deal with [Thompson] in the end. (*Id.* at 299.)

> In the same conversation, Squire also stated something to the effect if [Thompson] continue[d] down this road that [Thompson] would have to pay for [her] actions.

(*Id.*)

Squire's testimony during her disciplinary hearing is peppered with references to her duty to God, her physical ailments, and her personal problems. Some of it is difficult to understand. None of it supports her claim that the findings of the Ohio Supreme Court run counter to the weight of evidence. It is true that Squire provided affidavits of several witnesses who testified that a particular complainant attorney's behavior was appalling, and she has presented witnesses who testified that Squire was fair, did not shout, and did not behave inappropriately. However, despite these affidavits, it does not appear, on the face of the record, that there is "such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court

---

[8] At the disciplinary hearing, Squire's testimony on cross-examination did not clarify her conduct. Squire testified that she was "in a fog . . . [and] was so confused . . . [and had] no idea what to do" (*id.* at 1257.) and that she "did not have control of [her] courtroom." (*Id.* at 1258.) She went on to blame her inattention on her diabetes and the fact that her foot was hurting. (*Id.* at 1266.)

could not consistently with its duty, accept as final the conclusion on that subject" or that "imposition of the same discipline by this Court would result in grave injustice." *Cook*, 551 F.3d at 549-50. Thus, we find that the record supports the district court's decision to impose reciprocal discipline on Squire and affirm its decision.

## C.       Other Claims

Squire also refers to a series of other claims that either do not fall within the enumerated categories that we may review or are without merit.

### 1.       Lack of Notice in Original Complaint

Squire claims that the original complaint did not give her clear and specific notice of the charges against her. The Ohio Rules of Civil Procedure apply to disbarment proceedings in Ohio wherever practicable. In this case, the Ohio Rules of Civil Procedure require only that each count in a complaint clearly specify the particular statutes a respondent has allegedly violated. *See* OHIO R. CIV. P. 8. Both complaints against Squire detail the charges brought against Squire at length. Moreover, at the end of each of the counts, the complaint clearly summarizes which of Squire's actions violated specific canons in the Code of Judicial Conduct and the Code of Professional Responsibility. Thus, Coughlan has met this standard, and Squire's claim lacks merit.

### 2.       Addition of Claims to Amended Complaint without Giving Squire Prior Notice

Squire claims that two additional charges were added to the original complaint without Squire having first received a draft of the amended complaint to which she could respond before the the additional two counts were made public. Squire claims that this violated Ohio's procedural and constitutional due process requirements. However, Squire does not develop this argument other than to indicate that the amended complaint was made public too soon, which she claims, in and of itself, violated her due process rights. However, we do not address issues not briefed for us. *See Koubriti v. Convertino*, 593 F.3d 459, 471 (6th Cir. 2010) (holding that the appellate court need not decide an issue not briefed for it). Moreover, Squire received copies of the amended

complaint consistent with Ohio rules and had an opportunity to respond to it both before and during her hearing. Thus, any alleged violation did not deprive Squire of either notice or the opportunity to be heard.

### 3.     Appropriateness of the Imposed Discipline

Squire alleges that she should not have been punished in her capacity as an attorney for acts in which she allegedly engaged as a judge. In bringing this claim, Squire refers to an ultimately unsuccessful argument presented to the Ohio Supreme Court by Squire's counsel during her multi-day hearing. Although Squire states that she incorporates this argument by reference and attached the argument in an appended exhibit, she did not develop the argument in her brief and does not provide any law to support her claim. Therefore, we need not address it. *See Koubriti*, 593 F.3d at 471. We note only that Ohio's Government Bar Rule V specifically provides that any "justice, judge, or attorney found guilty of misconduct [by the Board] shall be disciplined . . . [by] suspension from the practice of law." See Supreme Court Rules for the Government of the Bar of Ohio, Rule V, § 5(A)(1)(b) (2002). Thus, Squire's argument, had she properly presented it, would be without merit.

### 4.     Race and Political Bias Claims

Squire claims that she was punished more harshly than similarly-situated colleagues of different political affiliations and races. Although Squire's brief alludes to the possibility that the Ohio Supreme Court unfairly discriminated against her by punishing her more harshly than other, similarly-situated colleagues because of her race and party, she does not develop this argument.

In support of her race bias claim, Squire mentions several disciplinary cases that she alleges demonstrate that similarly-situated white judges received lesser sanctions than Squire for more egregious behavior. Though Squire contends that the judges' violations were more outrageous than her own, Squire fails to show that this allegation is more than her subjective opinion, particularly as the judges' offenses are not similar

in content or scope to Squire's.  Furthermore, there is no evidence in the record to support a finding of racial bias.

Moreover, while it may be true that Squire was the only democrat on the Franklin County Domestic Relations and Juvenile Court, Squire presents no evidence that supports a finding that her punishment was overly harsh due to her political party affiliation.  Thus, we need not address her race and political bias claims. *See Koubriti*, 593 F.3d at 471.

### 5.     Alleged Misrepresentations

Squire also claims that the three-member panel erroneously determined that Squire made misrepresentations and that this finding tainted the entire complexion of the case.  In hearing a disciplinary case, a three-member panel conducts an investigation and full hearing.  *See Squire*, 469 F.3d at 553-54.  Afterwards, the panel submits a final report including a recommendation for discipline to the Board of Commissioners on Grievances and Discipline of the Supreme Court of Ohio.  *Id.*  Thus, if the panel's recommendation was unfairly tainted and if the Supreme Court failed to review the record and simply accepted a tainted recommendation, its finding could be unfair.

However, Squire offers no evidence that leads us to believe that the panel's recommendation was unfair or biased.   Moreover, a reading of the state Supreme Court's opinion leaves no question that the Court was very familiar with the transcript of Squire's hearing and based its conclusion on that record.  The language that Squire complains of, "much of [Squire's] testimonial digression contained misinformation, sophistry, distraction, falsehood and irrelevancy," *see Disciplinary Counsel v. Squire*, 876 N.E.2d 933, 949 (Ohio 2007), follows a series of direct quotations from Squire's testimony that abundantly support the Supreme Court's conclusions.  It is obvious from a fair reading of the Ohio Supreme Court's opinion that the court read the record carefully in reaching its finding.  Moreover, it is not error for the Supreme Court to find, upon reading the transcript, that Squire was biased and dishonest.

**IV.**

Here, the state Supreme Court proceeding was not so lacking in notice or opportunity to be heard as to constitute a deprivation of due process. Moreover, there is not such an infirmity of proof establishing the misconduct as to give rise to a clear conviction that this Court could not accept as final the conclusion of the Supreme Court. We therefore **AFFIRM** the district court's imposition of reciprocal discipline.