NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0706n.06

Nos. 17-3601/5605/5839

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 28, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| IN RE: CHRISTOPHER DAVID WIEST, | ) |
| | ) |
| Appellant. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| | ) COURTS FOR THE |
| | ) SOUTHERN DISTRICT OF |
| | ) OHIO, THE EASTERN |
| | ) DISTRICT OF KENTUCKY, |
| | ) AND THE WESTERN |
| | ) DISTRICT OF KENTUCKY |

BEFORE: CLAY, GIBBONS, and COOK, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Christopher David Wiest was suspended from the practice of law for two years by the Ohio Supreme Court for dishonest or deceptive conduct in violation of Ohio Rule of Professional Conduct 8.4(c). His charges arose from his use of confidential client information to profit from stock he purchased in a company that his client later acquired. Three district courts in this circuit—the Western District of Kentucky, the Eastern District of Kentucky, and the Southern District of Ohio—imposed reciprocal discipline based upon the Ohio Supreme Court's findings. Wiest now appeals this imposition of reciprocal discipline, alleging (1) he was denied due process because he was never put on notice of the charges against him, (2) the Ohio Supreme Court's reliance on his failure to disclose his misconduct to his client was a violation of his Fifth Amendment right against self-incrimination, and (3) the proof of his misconduct was otherwise infirm. For the reasons addressed below, we affirm the orders of the district courts imposing reciprocal discipline.

I.

Wiest is an attorney who has been admitted to practice law in Ohio since 2004 and in Kentucky since 2005. Thompson Hine LLP, Wiest's former employer, had a long-standing retainer agreement with Stanley Black & Decker ("Stanley") to provide legal services. Pursuant to this agreement, Wiest provided due diligence services in October of 2010 relating to Stanley's potential acquisition of a company known as InfoLogix, Inc. ("InfoLogix"). Wiest had never heard of InfoLogix prior to performing due diligence services on the company for Stanley.

In connection with the potential acquisition of InfoLogix, Wiest received confidential non-public information from Stanley on October 21, 2010, including that Stanley was proposing to purchase InfoLogix stock at a price of $4.75 per share. Between October 28, 2010, and November 16, 2010, Wiest purchased 35,000 shares of InfoLogix stock at prices ranging from $2.84 to $1.95 per share. On November 18, 2010, Wiest sold 13,510 InfoLogix shares at a loss, retaining 21,490 shares. Wiest never disclosed these trading activities to anyone at Stanley or Thompson Hine.

On December 15, 2010, Stanley announced that it was acquiring InfoLogix and would pay $4.75 a share. The next day, Wiest retained an attorney with expertise in SEC matters, and, on advice of counsel, he sold his remaining shares for a pretax profit of $56,291.97. The U.S. Securities and Exchange Commission (the "SEC") subsequently issued a subpoena compelling Wiest to produce Stanley's confidential information relating to his trading in InfoLogix stock. Wiest complied with this subpoena, providing his client's confidential information without communicating with Stanley regarding the investigation or his disclosures to the SEC.

In December of 2014, the Cincinnati Bar Association filed a complaint with the Ohio Board of Professional Conduct, alleging that Wiest violated the Rules of Professional Conduct

by using confidential information he obtained during the course and scope of representing Stanley in his personal purchase of the 35,000 shares of InfoLogix stock. The specific charges in the operative complaint were that Wiest's "undisclosed use of confidential information of a client for his own advantage breached the duties of loyalty and confidentiality which he owed to his client . . . and violated the Ohio Rules of Professional Conduct," including: Rule 1.6(a) prohibiting a lawyer from revealing confidential client information without informed consent; Rule 1.8(b) prohibiting a lawyer from using information relating to the representation of a client to the client's disadvantage without first obtaining the client's informed consent; Rule 8.4(b) prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness; and Rule 8.4(c) prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. DE 4-5, Third Am. Compl., Page ID 73; Ohio Prof. Cond. Rule 1.6(a), 1.8(b), 8.4(b), 8.4(c).

At the hearing before a panel of the board, however, the Cincinnati Bar Association shifted the focus of its charges away from Wiest's trading of InfoLogix stock based on confidential information and to his alleged disclosure of confidential client information to the SEC during its investigation of his trading activities. Following the hearing, the panel dismissed the alleged violation of Rule 1.6(a) because the complaint had failed to provide Wiest notice that it was his dealings with the SEC that were at issue rather than his purchase of InfoLogix stock. The panel also dismissed the alleged violation of Rule 1.8(b), finding there was insufficient evidence showing Wiest's conduct disadvantaged his client. But the panel upheld the charges for violations of Rule 8.4(b) and Rule 8.4(c) and recommended that Wiest be suspended from the practice of law for two years, with the final 18 months stayed on the condition that he engage in no further misconduct.

Wiest objected to the board's findings of misconduct, arguing that the Rule 8.4(b) violation related to the same conduct before the SEC for which he did not receive proper notice and that, regarding the Rule 8.4(c) violation, his purchases of InfoLogix's stock—as opposed to his disclosures to the SEC in compliance with a subpoena—did not involve the disclosure of confidential information he received from Stanley and were performed without the necessary fraudulent intent. The Ohio Supreme Court agreed with Wiest's first objection and dismissed his charge for violating Rule 8.4(b) on the grounds that he had not received proper notice of the facts underlying the charge. However, the court upheld the Rule 8.4(c) violation, finding that Wiest had "engaged in dishonesty, fraud, deceit, or misrepresentation . . . [by] us[ing] confidential information obtained in the course and scope of his representation of Stanley to trade in InfoLogix stock and failed to consult with either his client or his employer before doing so." DE 4-1, OH Sup. Ct. Slip Op., Page ID 46–50.

The Ohio Supreme Court's finding of a Rule 8.4(c) violation focused primarily on Wiest's "dishonesty and deceit" in failing "to disclose his actions to his client (or his firm) or to seek his client's informed consent to his actions." *Id.* at 47. While noting that it "cannot conceive of a situation in which an attorney could divorce a client's confidential communication that it was willing to pay more than 50 percent above a stock's current trading price from his desire to invest in that stock," *Id.* at 49, the court ultimately relied on "Wiest's repeated concealment of information that he was duty-bound to communicate to his client" to "infer his intent to engage in dishonesty, fraud, deceit, or misrepresentation." *Id.* In detailing this "repeated concealment," the court discussed Wiest's failure to disclose his trading of the stock both at the time of the trades and when he first learned of Stanley's intention to acquire InfoLogix and also Wiest "remain[ing] silent when the SEC issued a subpoena compelling him

to produce his client's confidential information." *Id.* The court subsequently suspended Wiest from the practice of law for two years, with the second year stayed on the condition that he engage in no further misconduct.

Following the Ohio Supreme Court's imposition of sanctions against Wiest, the Kentucky Bar Association filed a petition with the Kentucky Supreme Court to impose reciprocal discipline, which it did on April 27, 2017. The federal district courts within Ohio and Kentucky also considered imposing reciprocal discipline against Wiest, and, ultimately, the Southern District of Ohio, the Eastern District of Kentucky, and the Western District of Kentucky imposed reciprocal discipline. However, in a one-page order, the Northern District of Ohio declined to impose reciprocal discipline "on the basis of due process." DE 4-3, N.D. Ohio, Reciprocal Discipline Order, Page ID 59.

The orders from the three district courts imposing reciprocal discipline were subsequently appealed and are now before this panel.

## II.

"The *Rooker–Feldman* doctrine embodies the notion that appellate review of state court decisions and the validity of state judicial proceedings is limited to the Supreme Court under 28 U.S.C. § 1257, and thus that federal district courts lack jurisdiction to review such matters." *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) (footnote omitted); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) ("[T]his Court's appellate jurisdiction over state-court judgments . . . precludes a United States district court from exercising subject-matter jurisdiction . . . ."). However, because the district courts rely on the record developed by the state courts in imposing reciprocal discipline, this Court must consider whether alleged defects in those proceedings "so infected [the] federal proceeding that justice requires reversal of the

federal determination." *Cook*, 551 F.3d at 548 (alteration in original) (quoting *In re Ruffalo*, 390 U.S. 544, 553 (1968) (White, J., concurring)).

Federal courts are not "conclusively bound" by state disciplinary orders. *Id.* at 549; *see also Theard v. United States*, 354 U.S. 278, 282 (1957) ("[D]isbarment by federal courts does not automatically flow from disbarment by state courts."). Nevertheless, a disciplinary order handed down by a state court is entitled to "due respect." *In re Squire*, 617 F.3d 461, 466 (6th Cir. 2010) (quoting *Cook*, 551 F.3d at 549). "Federal courts also have noted that there are sound practical reasons for deferring to state judgments in this context, explaining that 'state bars are much larger than federal bars, and with size has come the development of the means to investigate charges of misconduct and resolve factual disputes.'" *Cook*, 551 F.3d at 549 (quoting *In re Cook*, 49 F.3d 263, 265 (7th Cir. 1995)).

Therefore, federal courts presumptively recognize the disciplinary condition created by the judgment of the state court unless certain factors are present, including:

> 1. That the state procedure from want of notice or opportunity to be heard was wanting in due process; 2, that there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not consistently with our duty accept as final the conclusion on that subject; or 3, that some other grave reason existed which should convince us that to allow the natural consequences of the judgment to have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Id.* at 549–50 (quoting *Selling v. Radford*, 243 U.S. 46, 51 (1917)); *see also Squire*, 617 F.3d at 466 (quoting the same factors).

III.

A.

The first issue before us is whether the Ohio Supreme Court's finding that Wiest violated Rule 8.4(c) by failing to consult with Stanley before or after using confidential client information in trading InfoLogix stock denied him due process. Wiest points to the court's explanation that it was Wiest's "repeated concealment of information," including when "the SEC issued a subpoena compelling him to produce his client's confidential information," that allowed the court to "infer his intent to engage in dishonesty." CA6 R. 13, Appellant Br. at 21–22. This explanation, he argues, shows that the 8.4(c) charge—like the 1.6(a) and 8.4(b) charges that had already been dismissed—was premised on his conduct before the SEC, for which he had not received notice. We find, however, that Wiest's Rule 8.4(c) violation was premised on his misuse of confidential client information and his failure to disclose this misconduct to Stanley rather than any conduct before the SEC; therefore, he had prior notice of the facts underlying this violation and was not denied due process.

Due process is satisfied "where an appellant is given 'an opportunity to respond to the allegations set forth in the complaint, testify at length in her own defense, present other witnesses and evidence to support her version of events . . . , [and is] able to make objections to the hearing panel's findings and recommendations.'" *Squire*, 617 F.3d at 467 (alteration in original) (quoting *Cook*, 551 F.3d at 550).

Because Wiest's conduct before the SEC, including any disclosure of confidential information, was not charged in the complaint, the Ohio Supreme Court properly concluded the charges for violating Rule 1.6(a) and Rule 8.4(b) should be dismissed, as those charges were premised on allegations that Wiest "provid[ed] confidential client information to the SEC and . . .

7

testif[ied] before the SEC without first seeking Stanley's informed consent." DE 4-1, OH Sup. Ct. Slip Op., Page ID 43–46. Unlike these other charges, however, the Rule 8.4(c) violation found by the court was premised on Wiest having used Stanley's confidential information to trade in InfoLogix stock without disclosing his actions to Stanley. Specifically, Wiest was charged with misconduct in his "personal use of [confidential client] information, without disclosure or permission, to buy and sell shares in InfoLogix[, which] constituted dishonest and deceptive conduct." DE 4-5, Third Am. Compl., Page ID 73, ¶ 10. Accordingly, the conduct underlining his Rule 8.4(c) violation was explicitly charged in the complaint.

In recounting the junctures at which Wiest could have, but failed to, inform Stanley of his trading activity, the Ohio Supreme Court included "when the SEC issued a subpoena compelling him to produce his client's confidential information" as one of three moments[1] when Wiest should have disclosed his actions to his client. DE 4-1, OH Sup. Ct. Slip Op., Page ID 49. But including the moment when Wiest received a subpoena from the SEC as one of the times when Wiest should have disclosed his trading activity to Stanley did not transform his violation into one based on his actions before the SEC. Wiest was put on notice of the facts underlying his Rule 8.4(c) violation—his use of confidential client information without consent to trade in InfoLogix stock—and was given an opportunity to defend against that charge in a hearing. Accordingly, his due process rights were not violated by the district courts' imposition of reciprocal discipline based on his Rule 8.4(c) violation.

---

[1] The other two moments were the point at which Wiest engaged in his trading activities and the time he first learned of Stanley's intent to complete the acquisition of InfoLogix—activities that were explicitly charged in the complaint.

B.

The second issue is whether punishing Wiest for his continued failure to disclose his actions to his client, even if performed under the advice of counsel, deprived him of his Fifth Amendment right against self-incrimination. We find that it did not.

As an initial matter, Wiest did not obtain counsel until December 16, 2010, when he learned Stanley had completed the acquisition of InfoLogix. Wiest asserts he invoked his Fifth Amendment privilege upon advice of counsel, making December 16, 2010 the earliest point that Wiest could have invoked the privilege. The conduct underlying his charge, however—both the trading using confidential information and the failure to disclose that trading—occurred prior to Wiest obtaining counsel and therefore prior to his purported invocation of his Fifth Amendment rights. Wiest's duty to disclose his trading activities to his client arose prior to and contemporaneously with his undertaking those actions, and his failure to do so at that time constituted the misconduct underlying his violation.

More fundamentally, however, Wiest's argument must fail because the Fifth Amendment's protections do not relieve an attorney of his ethical duty to communicate with his client. "The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, requires that '[n]o person . . . shall be compelled *in any criminal case* to be a *witness* against himself.'" *Chavez v. Martinez*, 538 U.S. 760, 766 (2003) (quoting U.S. Const. amend. V) (citation omitted). The Supreme Court has held that the Fifth Amendment "not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer *official questions* put to him in any other *proceeding*, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (emphasis added).

Accordingly, under the Fifth Amendment, an individual cannot be compelled by a governmental authority to answer questions or otherwise produce evidence during a proceeding, including an attorney disciplinary proceeding, which may later be used against him in a criminal proceeding. *See Spevack v. Klein*, 385 U.S. 511, 514–16 (1967) (Fifth Amendment applies to attorney disciplinary proceedings).

Here, however, Wiest is not attempting to invoke his Fifth Amendment rights to protect himself from being compelled by the government to testify about his potentially illegal insider trading during his disciplinary proceeding. Rather, he is arguing that his Fifth Amendment right against self-incrimination relieves him of his duty to disclose his misuse of confidential client information to that client, and therefore, that it was improper for the Ohio Supreme Court to infer deceitful intent from his failure to make such disclosures. The Fifth Amendment simply does not apply in this way. Wiest's duty to inform his client of his actions arose from his ethical obligations as an attorney—not because of any compulsion by a governmental authority. Moreover, his disclosure would not have occurred during the course of any proceedings. The fact that a court later inferred deceitful intent from Wiest's failure to communicate with a client as required by his ethical obligations does not make the Fifth Amendment applicable to this situation. Accordingly, the imposition of discipline based in part on the failure to disclose his misconduct to his client did not deprive Wiest of his Fifth Amendment right against self-incrimination.

C.

The final issue is whether some other "grave reasons" exist, which "under principles of right and justice," should prevent discipline from being imposed in this case. We fail to find any such reasons.

Other than the two grounds rejected above, the only reason articulated by Wiest for declining to impose reciprocal discipline is an infirmity of proof showing he acted with the requisite intent. This case, however, does not possess "such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not consistently with its duty, accept as final the conclusion on that subject . . . ." *Squire*, 617 F.3d at 470 (citing *Cook*, 551 F.3d at 549–50). Wiest purchased stock in a company he had never heard of upon learning that his client was willing to pay more than 50 percent above the stock's current trading price. And rather than disclose this purchase to his client—when the appearance alone that he was using confidential client information for his personal gain triggered his duty to communicate—Wiest chose to conceal his purchase from the client, to continue to remain silent when he learned his client was moving forward with the acquisition, and to once again remain silent when he profited from the acquisition and was investigated by the SEC for insider trading. Wiest does not dispute his trading activities or that he remained silent in the face of numerous events alerting him to his need to disclose his actions. Therefore, we do not find that the evidence in the record demonstrating Wiest's deceit was so infirm or undermined by other exculpatory evidence as to compel this panel to reject the discipline imposed. Accordingly, Wiest has failed to present any "grave reasons" making it inappropriate for the district courts to impose reciprocal discipline.

11

IV.

For the above reasons, we affirm the orders of the district courts imposing reciprocal discipline.